(text box: 1) NO. 5-01-0240

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

In re
 EVELYN S., )  Appeal from the

Alleged to Be a Person Subject to Involuntary )  Circuit Court of

Administration of Psychotropic Medication )  Madison County.

)

(The People of the State of Illinois, Petitioner- )  No. 01-MH-62

Appellee, v. Evelyn S., Respondent-Appellant )

(James E. Ryan, Attorney General of the State )  Honorable

of Illinois, and the Department of Human )  Ralph J. Mendelsohn,

Services, Intervenors-Appellees)). )  Judge, presiding.

________________________________________________________________________

JUSTICE CHAPMAN delivered the opinion of the court:

Evelyn S. (respondent) was found unfit to stand trial on a charge of first-degree murder, and she was admitted to the Alton Mental Health Facility (Alton).  In April 2001, the Madison County circuit court found her to be a person subject to the involuntary administration of psychotropic medication.  See 405 ILCS 5/2-107.1 (West 2000).  Evelyn S. raises numerous issues on appeal.  Because our conclusion that the trial court improperly allowed Evelyn S. to waive her right to counsel and proceed 
pro se
 requires a reversal, we need not address her other arguments.

I. BACKGROUND

In September 1999, Evelyn S. was arrested and charged with first-degree murder for the death of her husband.  On January 31, 2001, a Cook County court found her unfit to stand trial.  On February 21, 2001, she was admitted to Alton for treatment.  

On March 19, 2001, the State filed a petition for the involuntary administration of psychotropic medication to Evelyn S. pursuant to section 2-107.1 of the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/2-107.1 (West 2000)).  The petition alleged that Evelyn S. suffered from a psychotic disorder, not otherwise specified, and had been exhibiting symptoms including paranoia and aggression since her arrest in 1999.  The petition further alleged that Evelyn S. was incapable of making an informed decision regarding psychotropic medication and that the benefits of such medication would outweigh the potential harm.

The matter was initially set for a hearing on March 22, 2001.  At that time, the court granted Evelyn S.'s motion for a continuance so she could consult with her criminal attorney in Cook County.  The hearing was then set for March 29, at which time Evelyn S. requested a two-week continuance to allow her time to obtain an independent examination, conduct discovery, and arrange for witnesses to appear to testify on her behalf.  She also requested a jury trial.  The court denied both requests but granted her another one-week continuance to contact the attorney she claimed represented her in Cook County.  The court advised Evelyn S. that she was to tell her Chicago attorney to enter an appearance on her behalf by the time the court convened the following week.

On March 30, 2001, Evelyn S. filed a motion to reconsider the denial of her jury demand and, as an alternative, a motion for leave to file a late jury demand.  In the motion to reconsider, she contended that her initial jury demand was timely because the hearing had not yet begun.  In the motion for leave to make a late jury demand, she contended that, assuming, 
arguendo
, her March 29 jury demand was not timely, (1) any untimeliness was not due to any negligence on Evelyn S.'s part and (2) the State was not prejudiced by any delay.

On April 3, 2001, Evelyn S. served the Alton staff with interrogatories and a request to produce documents.  On the same day, she served Dr. M.V. Reddy, her attending physician at Alton, and Dr. Stephen Robinson with notices to appear pursuant to Supreme Court Rule 237(b) (166 Ill. 2d R. 237(b)).  Also on April 3, Evelyn S. filed a motion to dismiss the State's petition for a lack of subject matter jurisdiction.  She contended that the Cook County court's continuing jurisdiction to determine her fitness to stand trial (see 725 ILCS 5/104-20 (West 2000)) precluded the Madison County court's jurisdiction under the Mental Health Code.  The court denied the motion.

On April 5, 2001, the trial judge conducted a hearing at Alton.  Because the Chicago attorney had not entered an appearance for Evelyn S., the court informed her that her choices would be to accept her appointed attorney's continued representation or represent herself.  Evelyn S. chose the latter option.  

Dr. Suresh Chand was the only witness for the State.  Dr. Chand admitted that he had not spoken to Evelyn S. prior to the hearing.  She had refused to allow him to interview her.  His testimony was based on Evelyn S.'s medical records and his discussions with Alton staff members who had worked with her.  Dr. Chand testified that Evelyn S.'s mental illness manifested itself in her refusal to eat at least six meals since her admission, her refusal to bathe, and her aggressive and paranoid behavior.  He stated that she refused meals, fearing they had been poisoned.  He explained the benefits of each prescribed medication in reducing delusional thinking or anxiety or minimizing the side effects of the other medications and stated that these benefits outweighed the potential harm and that less restrictive alternatives to medication were not appropriate for Evelyn S..  Dr. Chand opined that Evelyn S. was incapable of making an informed decision about whether to take the medications.

Evelyn S. called her brother, Peter Popovich, to testify on her behalf.  He testified that she had always been devoutly religious and had professed to believe in faith healing rather than medication long before the murder charge was filed against her.  Popovich further testified that he had never known his sister to refuse to bathe or keep clean, nor had he known her to accuse anyone of trying to poison her.  

Evelyn S. testified that she had never told the staff at Alton that she feared her food was being poisoned but that she never told them she was fasting and praying for Lent because "[i]t's supposed to be done in silence and a very private thing."  She stated that the staff documented that she refused to bathe because she wanted to wait for a phone call from her attorney in Chicago and bathe later.  She further testified that she was not mentally ill but was grieving for her husband.  A friend who ran a psychiatric outpatient clinic in Chicago had explained to Evelyn S. that the symptoms of grief can be similar to those of mental illness.

The court asked Dr. Chand if the side effects of the medications sought to be administered to Evelyn S. would be made worse if she were given the drugs while she was fasting.  Dr. Chand stated that any side effects could be reduced by reducing the dosages.

At the end of the hearing, the court found Evelyn S. to be a person subject to the involuntary administration of psychotropic medication, and the court entered an order authorizing the staff at Alton to administer Risperdal, Haldol, lorazepam, Cogentin, Benadryl, and Haldol decanoate to Evelyn S. and conduct the testing necessary to monitor any adverse reactions.  The order was to go into effect on April 16, 2001, to coincide with the end of Lent so as to minimize the potential adverse effects from taking the medications while fasting.

Evelyn S. filed the instant appeal the same day.  She contends that the trial court erred by (1) allowing her to waive counsel despite evidence she was not competent to do so, (2) denying her request for a jury (see 405 ILCS 5/3-802 (West 2000)), (3) denying her request for a continuance to conduct discovery (see 405 ILCS 5/2-107.1(a-5)(2)(i) (West Supp. 2001)), (4) denying her request for an independent examination (see 405 ILCS 5/3-804 (West 2000)), (5) finding her subject to the involuntary administration of psychotropic medication without the testimony of at least one psychiatrist who had actually examined her (see 405 ILCS 5/3-807 (West 2000)), (6) failing to employ a "substituted judgment test" to determine her expressed desires regarding her care when she was competent, and (7) authorizing the maximum dosages of medication requested in the petition, which exceeded those suggested by the State's only witness.  She also argues that section 2-102(b) of the Mental Health Code (405 ILCS 5/2-102(b) (West 2000) (allowing the withholding of medical treatment to members of any "well-recognized religious denomination" where it is necessary to respect their religious beliefs)) is unconstitutional because it impermissibly entangles the state with religion by requiring courts to decide what denominations are "well-recognized."  She finally contends that if section 2-102(b) is void, section 2-107.1 is unconstitutional without it.  See 
In re C.E.
, 161 Ill. 2d 200, 224, 641 N.E.2d 345, 356 (1994) (rejecting a constitutional challenge to section 2-107.1 partly on the basis of section 2-102).

On April 12, 2001, this court entered an order staying the trial court's order pending appeal.  On April 23, 2001, the State filed a motion to dismiss Evelyn S.'s appeal, contending that this court lacks jurisdiction to consider it because it was an interlocutory order merely effectuating the Cook County court's order for Evelyn S. to undergo treatment.  We ordered the State's motion taken with the case.  On July 27, 2001, we granted the Attorney General's motion to intervene on behalf of the Illinois Department of Human Services (Department) to defend against Evelyn S.'s constitutional challenge and respond to the State's motion to dismiss.  On January 2, 2002, just days before oral argument in this case, the Attorney General filed a motion to dismiss this appeal on the ground of mootness because the Department intended to recommend that Evelyn S. be found fit to stand trial.  We ordered the motion taken with the case.  On March 15, 2002, the Cook County trial court found Evelyn S. fit to stand trial.  She has been transferred to the Cook County jail to await trial on the murder charges. 

For the reasons that follow, we deny both motions to dismiss and reverse the trial court's order.

II. ANALYSIS

A. The Attorney General's Motion to Dismiss on the Ground of Mootness

The instant appeal is moot.  Evelyn S. was found fit to stand trial and transferred to the Cook County jail.  The State no longer is seeking to medicate her against her will.  Thus, our decision cannot grant effective relief to any party.  Thus, it is essentially an advisory opinion.  Appellate courts generally lack jurisdiction to render advisory opinions.  
In re Mary Ann P.
, 202 Ill. 2d 393, 401, 781 N.E.2d 237, 242 (2002).  We find that the issues raised in Evelyn S.'s appeal fall within the public-interest exception to the mootness doctrine, however.  The criteria for this exception are (1) the public nature of the issues presented, (2) the desirability of an authoritative determination for the purpose of guiding public officials, and (3) the likelihood that the question will recur.  
In re Mary Ann P.
, 202 Ill. 2d at 402, 781 N.E.2d at 242-43.  The procedures courts must follow to authorize the involuntary medication of mental health patients are a matter of "substantial public concern."  
In re Mary Ann P.
, 202 Ill. 2d at 402, 781 N.E.2d at 243.  Because of the short duration of orders authorizing involuntary treatment, it is likely that the circumstances present in the case at bar will recur without the opportunity to be litigated before the case is rendered moot by the expiration of the order.  See 
In re Mary Ann P.
, 202 Ill. 2d at 402-03, 781 N.E.2d at 243.  Moreover, we note, as did the Attorney General, that between the time of the hearing and the time their briefs were filed in this court both parties changed their position with respect to jurisdiction.  This demonstrates the confusion that exists over the issues presented.  Thus, we find a definitive answer desirable.  We therefore deny the Attorney General's motion to dismiss, and we consider the merits of Evelyn S.'s contentions.  

B. Applicability of the Mental Health Code

The State's arguments are premised on the State's contention that because Evelyn S. initially came before the court system pursuant to the Code of Criminal Procedure of 1963 (725 ILCS 5/100-1 
et seq.
 (West 1998)), the Mental Health Code does not pertain to these proceedings at all.  The State points out that the Code of Criminal Procedure of 1963, rather than the Mental Health Code, applies to the involuntary commitment of criminal defendants found unfit to stand trial.  From this, the State reasons, it follows that the Code of Criminal Procedure of 1963 also applies exclusively to proceedings to administer psychotropic medications against the patient's wishes.  Evelyn S. argues that the right to refuse such medication is a fundamental liberty interest and that accepting the State's argument would allow courts to override this right automatically if a mental health patient is a defendant who has been found unfit to stand trial.  The Attorney General argues that the provisions of the Mental Health Code and the Code of Criminal Procedure of 1963 were intended to operate together and that, because the Code of Criminal Procedure of 1963 contains no provisions relating to the administration of psychotropic medication, the Mental Health Code applies to such proceedings.  We hold that the Mental Health Code governs the procedures.

Involuntary mental health services, including the involuntary administration of psychotropic medications, involve a " 'massive curtailment of liberty.' "  
In re Barbara H.
, 183 Ill. 2d 482, 496, 702 N.E.2d 555, 561 (1998) (quoting 
Vitek v. Jones
, 445 U.S. 480, 491, 63 L. Ed. 2d 552, 564, 100 S. Ct. 1254, 1263 (1980)).  Thus, the courts of this state have repeatedly recognized the importance of "the procedures enacted by our legislature to ensure that Illinois citizens are not subjected to such services improperly."  
In re Barbara H.
, 183 Ill. 2d at 496, 702 N.E.2d at 561-62; see, 
e.g.
, 
In re C.E.
, 161 Ill. 2d at 213, 641 N.E.2d at 351 (holding that mentally ill patients have a constitutional liberty interest in refusing psychotropic medication); 
In re Jones
, 318 Ill. App. 3d 1023, 1025-26, 743 N.E.2d 1090, 1093 (2001) (strict compliance with the procedural safeguards of the Mental Health Code is required).  These protections are no less important to a criminal defendant found unfit to stand trial than they are to a mental health patient subject to involuntary civil commitment.  See, 
e.g.
, 
People v. DeJesus
, 263 Ill. App. 3d 487, 488-89, 636 N.E.2d 112, 113-14 (1994) (the respondent was also a defendant who had been found unfit to stand trial; the court held that the Mental Health Code provides a statutory right to a jury hearing on petitions for the involuntary administration of psychotropic medications).  Indeed, were we to accept the State's contention that the order to medicate Evelyn S. was no more than an order effectuating the Cook County court's order to render her fit to stand trial, we would find the procedural protections of the Mental Health Code even more important.  See 
United States v. Brandon
, 158 F.3d 947, 957 (6th Cir. 1998) (procedures to determine whether to involuntarily medicate a nondangerous pretrial detainee for the sole purpose of rendering him fit to stand trial must satisfy strict-scrutiny review even though a lower standard of review is appropriate where the medication is sought to protect the respondent's safety or the safety of those around him); see also 
Bee v. Greaves
, 744 F.2d 1387, 1395 (10th Cir. 1984) (adopting a strict-scrutiny test for decisions to medicate pretrial detainees and questioning whether the government's interest in rendering them fit for trial, standing alone, could ever be sufficiently compelling to support involuntary medication); 
Woodland v. Angus
, 820 F. Supp. 1497, 1509 (D. Utah 1993); but see 
Khiem v. United States
, 612 A.2d 160, 169 (D.C. 1992) (finding the governmental interest in bringing a defendant to trial more compelling than its interests in involuntarily medicating a civilly committed mental health patient).  Thus, we conclude that the legislature could not possibly have intended to leave persons such as Evelyn S. without procedural safeguards.  With this premise in mind, we consider what procedure is applicable to the proceedings here at issue.

The Code of Criminal Procedure of 1963 includes procedures for the involuntary commitment of defendants found unfit to stand trial.  Its provisions, rather than those of the Mental Health Code, govern proceedings to involuntarily admit those defendants and to determine whether they remain unfit to stand trial.  
In re Clarke
, 200 Ill. App. 3d 365, 369, 558 N.E.2d 719, 721 (1990).  Under the Code of Criminal Procedure of 1963, the court retains "supervisory jurisdiction" to monitor an unfit defendant's commitment and treatment.  See 
People v. Lavold
, 262 Ill. App. 3d 984, 990, 635 N.E.2d 919, 924 (1994) (discussing the period of time during which a pretrial detainee may be held pursuant to this jurisdiction without a separate finding that he or she is subject to civil commitment).  Specifically, section 104-16(d) provides that, upon finding a defendant not fit to stand trial but likely to become fit within a year, the court must order the defendant to undergo treatment to render him or her fit to stand trial.  725 ILCS 5/104-16(d) (West 2000).  Section 104-17(b) provides that the court may order the defendant committed to the Department or a private mental health facility for treatment.  725 ILCS 5/104-17(b) (West 2000).  Within 30 days of the entry of such an order, the person supervising the treatment must file a report specifying the defendant's diagnosis, the manner of treatment proposed, and an estimate of the time it will take to render the defendant mentally fit to stand trial.  725 ILCS 5/104-17(e) (West 2000).  Section 104-20(a) requires the court to hold hearings every 90 days to determine if the defendant is still unfit to stand trial and, if so, whether the defendant is likely to attain fitness within one year.  725 ILCS 5/104-20(a) (West 2000).  If the court finds that the defendant is still unfit to stand trial but is making progress in treatment towards becoming fit, the court "may continue or modify its original treatment order."  725 ILCS 5/104-20(c) (West 2000).   We think the State's position overstates the authority this statutory scheme gives the trial court to order any and all treatment necessary to render a defendant fit.  The Code of Criminal Procedure of 1963 includes no provisions for determining whether the treatment of a defendant found unfit to stand trial may include involuntary medication.  In other words, while the Code of Criminal Procedure of 1963 provides its own procedural safeguards for the involuntary 
admission
 of defendants found unfit to stand trial, it provides no alternative to the procedural safeguards afforded mental health patients under the Mental Health Code for the involuntary administration of psychotropic medication.  If the Mental Health Code does not apply, then, there are no procedural safeguards that do.  Given the importance of the rights at stake, we conclude that the legislature could not have intended this result.

In so holding, we note that the conclusion we reach is similar to that reached by the Seventh Circuit Court of Appeals applying Illinois law in 
Johnson v. Brelje
, 701 F.2d 1201 (7th Cir. 1983).  There, the Seventh Circuit found that defendants found unfit to stand trial enjoyed the right to be placed in the least restrictive environment guaranteed to civilly committed mental health patients by the Mental Health Code.  
Johnson
, 701 F.2d at 1206; see 405 ILCS 5/2-102(a) (West 2000).  Although this 
result
 was later superceded by statute  (
Maust v. Headley
, 959 F.2d 644, 648 (7th Cir. 1992)), we find its 
rationale
 persuasive.  The 
Johnson
 court found that the Mental Health Code and the Code of Criminal Procedure of 1963 were meant to work together to govern the treatment and conditions of the confinement of defendants found unfit to stand trial.  It is only where there are conflicts between the two codes that the provisions of the Code of Criminal Procedure of 1963 take precedence.  
Johnson
, 701 F.2d at 1206; see 725 ILCS 5/104-29 (West 2000).  At that time, the Mental Health Code provision there at issue did not conflict with any provisions in the Code of Criminal Procedure of 1963.  
Johnson
, 701 F.2d at 1206.  After an amendment to section 104-17(b) of  the Code of Criminal Procedure of 1963 (Pub. Act 83-839, eff. January 1, 1994 (1983 Ill. Laws 5455 (§1))), that section provides that defendants found unfit to stand trial "shall be placed in a secure setting unless the court determines that there are compelling reasons why such placement is not necessary."  725 ILCS 5/104-17(b) (West 2000).  Because this amended statute conflicts with the Mental Health Code provision, the same court later concluded that the amended statute eliminated the right that pretrial detainees found unfit to stand trial previously had to be detained in the least restrictive environment.  
Maust
, 959 F.2d at 648.  Contrary to the State's contention, we do not believe that 
Maust
 undermines the 
Johnson
 court's conclusion that the two codes were intended to work together.  Unlike the provision at issue in 
Maust
, the provisions of section 2-107.1 do not conflict with any provisions of the Code of Criminal Procedure of 1963.  We therefore conclude that the Mental Health Code applies to the proceedings below.

C. The State's Motion to Dismiss

The State contends that this court lacks jurisdiction to consider Evelyn S.'s appeal because  it was not a final order but rather an order effectuating an order to undergo treatment.  We disagree.  The State contends that the hearing to determine whether Evelyn S. should be subjected to medication against her will was really a 90-day hearing under section 104-20 of the Code of Criminal Procedure of 1963 (725 ILCS 5/104-20 (West 2000)) to determine whether she remained unfit to stand trial.  The State apparently concludes that the order authorizing Alton staff to medicate Evelyn S. is an order modifying an earlier order for treatment after a finding that she remains unfit.  See 725 ILCS 5/104-20(c) (West 2000).  Supreme Court Rule 604 provides appellate jurisdiction over appeals from certain orders that might be entered in a criminal trial prior to a final verdict; a finding pursuant to section 104-20 is not among them.  188 Ill. 2d R. 604.  We conclude, however, that the proceedings below fell within the purview of section 2-107.1 of the Mental Health Code and were separate and distinct from the proceedings to commit Evelyn S. under the Code of Criminal Procedure of 1963, even though the proceedings are factually entwined.  

First we note that the State's position is contrary to the procedural history of this case and its own actions in the trial court.  We can think of no logical reason for the State to initiate a 90-day hearing to reexamine Evelyn S.'s fitness to stand trial only 47 days after the initial finding of unfitness.  Moreover, we note that the State presented no evidence to the Madison County court related to her fitness or unfitness to stand trial and that, while this appeal was pending, the Cook County court that had initially found Evelyn S. unfit continued to reassess her fitness.  Even were this not so, however, we would find the State's position untenable.

As earlier noted, both the Code of Criminal Procedure of 1963 and the Mental Health Code provide procedures for involuntary admission.  The procedures parallel each other in many respects.  When a patient is involuntarily admitted pursuant to section 3-809 of the Mental Health Code (405 ILCS 5/3-809 (West 2000)), the court must consider a preliminary report in determining what treatment to order.  405 ILCS 5/3-810 (West 2000); 
cf.
 725 ILCS 5/104-15(b) (West 2000).  Within 30 days of the admission order, the facility to which the patient is admitted must file with the court an updated treatment plan.  405 ILCS 5/3-814(a) (West 2000); 
cf.
 725 ILCS 5/104-17(e) (West 2000).  The purpose of this requirement is "to ensure that the recipient [of mental health services] is receiving adequate and humane care and services."  405 ILCS 5/3-814(b) (West 2000).  Thus, an order for involuntary admission is also an order for treatment.  If the treating psychiatrists determine that treatment should include psychotropic medication the patient does not wish to take, they must file a petition pursuant to section 2-107.1, despite the general authorization to treat the patient the admission order provides.  405 ILCS 5/2-107.1(a-5)(2)(i) (West 2000); 
In re Barbara H.
, 183 Ill. 2d at 497-98, 702 N.E.2d at 562.  We find this scheme analogous to the process of admitting a pretrial detainee found unfit to stand trial under the Code of Criminal Procedure of 1963.  We conclude that the trial court's order was final and appealable under Supreme Court Rules 301 and 303 (155 Ill. 2d Rs. 301, 303).

D. Evelyn S.'s Capacity to Waive Counsel 

Evelyn S. contends that the trial court erred in allowing her to waive her right to counsel.  She contends that she was incapable of knowingly waiving her right to counsel because she had previously been found unfit to stand trial in the criminal proceedings.  She argues for a 
per se
 rule that a defendant found unfit to stand trial is necessarily incapable of making an informed waiver of the right to counsel.  Although we are unwilling to hold that a prior finding of unfitness to stand trial in a criminal proceeding in another court renders a respondent in Evelyn S.'s position 
per se
 incapable of knowingly and understandingly waiving her right to counsel, we find that it must at least trigger a more detailed inquiry into the respondent's competency to waive that important right than occurred in the instant case. 

Every person alleged to be subject to the involuntary administration of psychotropic medication has a right to be represented by counsel.  
In re Jones
, 318 Ill. App. 3d at 1026, 743 N.E.2d at 1093.  The right to counsel is a central feature in the procedural safeguards enacted to protect people in Evelyn S.'s position from being improperly subjected to involuntary mental health services.  
In re Barbara H.
, 183 Ill. 2d at 496, 702 N.E.2d at 561-62.  We conclude that the trial court abused its discretion in failing to conduct an adequate inquiry into Evelyn S.'s capacity to knowingly waive her right to counsel and completely failing to inquire into her capacity to retain representation of her choice.  Moreover, we question whether Evelyn S.'s waiver of counsel was truly voluntary.

The Mental Health Code provides that a court may not accept a respondent's waiver of counsel "unless, after conferring with counsel, the respondent requests to represent himself and the court is satisfied that the respondent has the capacity to make an informed waiver of his right to counsel."  405 ILCS 5/3-805 (West 2000).  In the instant case, it was the court, not Evelyn S., who initiated any consideration of Evelyn S. proceeding 
pro se
.  Evelyn S. stated that she did not wish to be represented by Anthony Rothert, the attorney from the Guardianship and Advocacy Commission who had been appointed to represent her, and that her family had retained counsel for her in Cook County who was unable to reach her.  She repeatedly stated she wanted to be represented by alternate counsel.  At the March 29 hearing, the trial court asked Evelyn S. if she was asking for a continuance to allow her private attorney to be present.  She first said: "Your Honor, do you understand it's against my religion to take any kind of drugs?  This whole petition is against my religion."  When asked if she understood the question, she stated, "I am asking for a continuance so this attorney who has been trying to get through to me, six calls in one day alone disconnected–."  She repeated her request for the opportunity to secure alternate representation at the April 5 hearing.  We do not believe that these statements amount to a "request" to represent herself.

We recognize that Evelyn S.'s statements with respect to her representation presented the trial court with a dilemma.  Although she insisted that she had retained private counsel in Chicago, this did not appear to be the case.  She never referred to her private attorney by name.  The trial court allowed her two continuances of one week each and told Evelyn S. that her attorney must enter an appearance for her by the end of the second continuance.  On April 5, the trial judge stated that he had looked into the court files and discovered that no attorney other than Rothert had entered an appearance for Evelyn S..  A respondent in a petition for the involuntary administration of psychotropic medication has not only the right to be represented by counsel but also the right to be represented by the counsel of her choice.  The failure to honor a respondent's choice not to be represented by the attorney appointed to represent her may be reversible error.  See 
In re Barbara H.
, 183 Ill. 2d at 495-96, 702 N.E.2d at 561; see also 
In re Cathy M.
, 326 Ill. App. 3d 335, 340, 760 N.E.2d 579, 584 (2001). 

The trial court in 
In re Barbara H.
 was presented with a situation analogous to the one in the case at bar.  There, as here, the respondent told her court-appointed attorney that she did not wish to be represented by him and had secured private representation instead.  She refused to attend the hearing with her court-appointed attorney, so this information was relayed to the court by the attorney rather than by the respondent herself.  
In re Barbara H.
, 183 Ill. 2d at 494, 702 N.E.2d at 561.  The trial court continued to treat the appointed attorney as Barbara H.'s attorney.  
In re Barbara H.
, 183 Ill. 2d at 494-95, 702 N.E.2d at 561.  The Illinois Supreme Court held that this was in error because it violated Barbara H.'s right to choose counsel to represent her.  
In re Barbara H.
, 183 Ill. 2d at 496, 702 N.E.2d at 561.  Similarly, had the trial court forced Evelyn S. to continue to be represented by an attorney she did not want representing her without inquiring into her capacity to retain counsel of her own choice, it would have erred. 

It does not follow from this that the court had no choice but to allow her to represent herself.  In 
In re Yoder
, 289 Ill. App. 3d 465, 471, 682 N.E.2d 753, 757 (1997), this court held that a trial court properly exercised its discretion when it refused to accept a respondent's waiver of counsel where it did not believe that the respondent had the capacity to represent himself effectively due to his mental illness.  We noted there that the court has the obligation to inquire into the respondent's capacity to represent himself.  We affirmed the trial court despite its failure to do so only because the court was familiar enough with the respondent, from its experience with him, to make that judgment without posing additional questions to him.  
In re Yoder
, 289 Ill. App. 3d at 471, 682 N.E.2d at 757.  Thus, a trial court does not err if it refuses to allow a respondent to proceed 
pro se
 without sufficient satisfaction the respondent has the capacity to do so.  

Evelyn S. requested to be represented by counsel other than Rothert.  The court was thus presented with a choice of allowing her to proceed 
pro se
, finding she lacked the capacity to either represent herself or retain counsel and refusing to dismiss Rothert, or delaying the hearing again to allow Evelyn S. to retain counsel of her own choice.  In 
In re Barbara H
., the supreme court explained the trial court's responsibility in such a situation:

"When presented with information that Barbara H. had secured alternative representation and rejected representation by the public defender, the court should not have ignored the matter.  Instead, it should have delayed action on the commitment and medication issues pending a determination as to the status of her legal representation and her capacity to decide who should represent her.  
If evidence showed that Barbara H. was incapable of arranging for counsel or making an informed choice as to who should represent her, the circuit court would have been completely justified in appointing counsel for her
 ***."  (Emphasis added.)  
In re Barbara H.
, 183 Ill. 2d at 495-96, 702 N.E.2d at 561.

The State contends that the trial court followed this mandate.  We disagree.

In the instant case, unlike in 
In re Barbara H.
, the trial court did make an inquiry into Evelyn S.'s representation.  However, the court made a very limited inquiry into Evelyn S.'s ability to represent herself and made no inquiry into her capacity to make an informed choice about who would represent her.  Had it made such an inquiry, the court may well have been justified in concluding that Evelyn S. was not capable of making an informed choice about who would represent her.  Her objection to Rothert's continued representation appeared to be based in part on a misconception of his role and in part on paranoid delusions that were a symptom of her mental illness.  When presented with the choice of proceeding 
pro se
 or accepting Rothert's continued representation, she accused him of calling other attorneys and telling them not to take her case.  She claimed that Rothert had made these calls at the behest of the trial judge, who she claimed had admitted to Rothert that the State wanted to medicate her "because they need a conviction on the grounds of mental illness."  After more discussion, she chose the option of representing herself, stating, "I do not need a guardian."   Moreover, the only inquiry the court made into Evelyn S.'s capacity to waive counsel and represent herself consisted of the following exchange:

"THE COURT:  How far have you gone in school?

[EVELYN S.:]  I've had some college training.

THE COURT:  Okay.  And I'm certain that you can read and write and understand the English language; is that correct?

[EVELYN S.:]  Yes, sir."

The court then explained that the Guardianship and Advocacy Commission could provide her with an attorney to represent her free of charge and "that happens to be Tony Rothert."  The court asked if Evelyn S. understood this and if it was her desire that Rothert not represent her.  She stated that this was correct.

"THE COURT:  You understand then that your option is going to be that you're going to have to represent yourself *** as an attorney.  I would have to hold you to the same standards as an attorney.

That [
sic
] you would have to have the ability to present evidence in an orderly fashion and by the rules of evidence of the State of Illinois.  You would have to make the correct objections before I would rule on them.  ***

Do you feel, knowing all this, that you would still have the ability and want to represent yourself in this hearing?

[EVELYN S.:]  In other words, your Honor, you're telling me that even though my family's attorney was not contacted until late last night and said that he had court today, he already has a trial commitment that he cannot change and that he needs a continuance, I'm being denied *** a continuance for this gentleman to have time to come in here and advise me?

THE COURT:  Ma'am, this matter has now been continued for two weeks.  ***  The initial question I have for you[–]did you understand everything I just told you?  Did you understand everything I just told you?

[EVELYN S.:]  I understood.

THE COURT:  And knowing all that, is it your desire to represent yourself?

[EVELYN S.:]  Yes, it is."

The trial court was aware that Evelyn S. had recently been found unfit to stand trial.  This means that another court had already found Evelyn S. unable to understand the nature and purpose of the proceedings against her or unable to assist an attorney in her defense.  
People v. Coleman
, 168 Ill. 2d 509, 524, 660 N.E.2d 919, 928 (1995).  The State argues that the Cook County court found her unable to understand only the nature of the criminal proceedings against her and that such a finding is completely consistent with a finding that she is capable of understanding the nature of civil proceedings well enough to waive counsel.  The State's argument overlooks the fact that the finding of unfitness was, essentially, an assessment of Evelyn S.'s "ability to function within the context of trial."  
Coleman
, 168 Ill. 2d at 524, 660 N.E.2d at 928.  The State offers no principled distinction between the ability to function in the context of a civil trial and the ability to function in the context of a criminal trial, and we can think of none.   

The Illinois Supreme Court has held that the standard for assessing the capacity to waive counsel is the same as the standard for assessing the fitness to stand trial.  
Coleman
, 168 Ill. 2d at 524, 660 N.E.2d at 928.  We note, however, that in the former context, the criminal defendant's capacity to function well enough in the trial setting merely 
to assist
 trial counsel in her defense is at issue, whereas in the latter context, her capacity to function and understand the trial process well enough to advocate effectively for herself is at issue.  We think it self-evident that the latter context requires at least as high a level of functioning as the former, if not more so.

In 
In re Click
, 196 Ill. App. 3d 413, 423, 554 N.E.2d 494, 500 (1990), the court found that the very nature of a hearing for involuntary mental health services (there, involuntary commitment), coupled with a respondent's demonstrated confusion regarding the process, should lead a trial court to "question whether respondent ha[s] the capacity to make an informed waiver of counsel."  There, the respondent specifically stated that he did not understand the trial court's explanation of what representing himself would entail, and the respondent asked the court to clarify it for him, which the court refused to do.  
In re Click
, 196 Ill. App. 3d at 416-17, 554 N.E.2d at 495-96.  Evelyn S. did not ask for a clarification.  She did, however, exhibit confusion over the process in different ways.  As stated, she referred to Rothert as a "guardian" and expressed her belief that the State was trying to medicate her so she could be convicted of murder on the basis of having a mental illness.  At the close of the March 29 hearing, she asked the judge if he was the correct person to speak to about being transferred from one unit at Alton to another.  

Given the questions the finding of unfitness and Evelyn S.'s behavior at the hearings raise about her capacity to waive her right to counsel and represent herself, we think the trial court's questions were inadequate.  Although Evelyn S. indicated that she understood what the court had told her and she believed she had the ability to represent herself, we do not think such a passive affirmation suffices in the face of so many indications to contradict it.  The court has an obligation to be certain a respondent such as Evelyn S. has the "legal or educational background" necessary to represent herself.  See 
In re Yoder
, 289 Ill. App. 3d at 470, 682 N.E.2d at 756.  We do not think the ability to read and write English, a few college classes, and Evelyn S.'s own contention that she had the ability to represent herself in the face of her obvious confusion over the purpose of the proceedings meet this standard.  At the very least, the trial court should have asked her a few questions requiring answers that would show whether she had a basic understanding of what the hearing was about and the role of counsel.  See 
In re Click
, 196 Ill. App. 3d at 423, 554 N.E.2d at 500.  We conclude that Evelyn S. was denied her statutory right to counsel.

III. CONCLUSION

For the foregoing reasons, we deny both motions to dismiss this appeal.  Because Evelyn S. has been found fit to stand trial and transferred to the Cook County jail, it would be futile to remand this matter.  Therefore, we will simply reverse the trial court's ruling.

Reversed.

GOLDENHERSH and KUEHN, JJ., concur.

                                      NO. 5-01-0240

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

In re
 EVELYN S., )  Appeal from the

Alleged to Be a Person Subject to Involuntary )  Circuit Court of

Administration of Psychotropic Medication )  Madison County.

)

(The People of the State of Illinois, Petitioner- )  No. 01-MH-62

Appellee, v. Evelyn S., Respondent-Appellant )

(James E. Ryan, Attorney General of the State )  Honorable

of Illinois, and the Department of )  Ralph J. Mendelsohn,

Human Services, Intervenors-Appellees)). )  Judge, presiding.

___________________________________________________________________________________

Opinion Filed
: April 1, 2003

___________________________________________________________________________________

Justices
: Honorable Melissa A. Chapman, J.

Honorable Richard P. Goldenhersh, J., and

Honorable Clyde L. Kuehn, J.,

Concur

___________________________________________________________________________________

Attorneys
 Anthony E. Rothert, Staff Attorney, Elvis C. Cameron, Managing Attorney, Jeff

for
 M. Plesko, Director, Legal Advocacy Service, Guardianship and Advocacy 

Appellant
 Commission, Metro East Regional Office, 4500 College Avenue, Suite 100, Alton,

IL 62002

___________________________________________________________________________________

Attorneys
 Hon. William Haine, State's Attorney, Madison County, 157 North Main, 

for
 Edwardsville, IL 62025; Norbert J. Goetten, Director, Stephen E. Norris, Deputy

Appellees
 Director, Rebecca E. McCormick, Staff Attorney, Office of the State's Attorneys

Appellate Prosecutor, Route 15 East, P.O. Box 2249, Mt. Vernon, IL 62864 (for The 

People of the State of Illinois)

James E Ryan, Attorney General, State of Illinois, Joel D. Bertocchi, Solicitor

General, Jan E. Hughes, Assistant Attorney General, 100 W. Randolph St., 12th

Floor, Chicago, IL 60601 (for James E. Ryan and the Illinois Department of Human

Services)

___________________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 04/01/03.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.