*In re* MARK W., a Person Asserted to Be Subject to Involuntary Treatment With Psychotropic Medications (The People of the State of Illinois, Petitioner-Appellee, v. Mark W., Respondent-Appellant (The Department of Human Services, Intervenor-Appellee)).

Fifth District   No. 5—02—0461

Opinion filed June 8, 2004.

1066

Jeff M. Plesko and Anthony E. Rothert, both of Guardianship and Advocacy Commission, of Alton, for appellant.

Bill Mudge, State's Attorney, of Edwardsville (Norbert J. Goetten, Stephen E. Norris, and Kevin D. Sweeney, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Lisa Madigan, Attorney General, of Chicago (Jan E. Hughes, Assistant Attorney General, of counsel), for appellee Department of Human Services.

JUSTICE DONOVAN delivered the opinion of the court:

Respondent, Mark W., appeals from an order of the circuit court of Madison County granting the State's petition to involuntarily administer psychotropic medication to Mark W. For the following reasons, we affirm the trial court's finding that section 2—107.1 of the Mental Health and Developmental Disabilities Code (Mental Health

Code) (405 ILCS 5/2—107.1 (West 2002)) is constitutional as applied to pretrial detainees generally and to respondent specifically, but we reverse the order granting the State's request to involuntarily administer psychotropic medication.

## BACKGROUND

On December 19, 1999, Mark W. was arrested in Peoria County and charged with the aggravated battery of two police officers. The record reveals that on the evening of December 19, 1999, the police were summoned to a bar where Mark W. was alleged to have been removing beer bottles from the garbage and drinking the remaining beer from the discarded bottles. The police found Mark W. a short distance from the tavern. Mark W. admitted going through the garbage and indicated that he was entitled to do so because he owned the property. He also told the police that he was their "commander" and a "priest of the high order." In the process of Mark W.'s arrest, he allegedly struggled with and struck the two arresting officers.

On December 28, 1999, Mark W. was indicted on two charges of having "made physical contact of an insulting or provoking nature" with two police officers. On June 5, 2000, a judge of the Tenth Judicial Circuit in Peoria County found Mark W. unfit to stand trial pursuant to section 104—10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/104—10 (West 2002)). Mark W. was admitted to Alton Mental Health Center on June 19, 2000. While at Alton Mental Health Center, Mark W. received various antipsychotic drugs, including Zyprexa, which was replaced with Risperdal, which was ultimately replaced with Clozaril. On May 25, 2001, the Peoria County trial court found Mark W. fit to stand trial and he was released on bond.

Mark W. stopped taking his medication after his release on bond. On February 8, 2002, Mark W. was again found unfit to stand trial by the trial court in Peoria County. On April 3, 2002, Mark W. was remanded to the custody of Department of Human Services (DHS) for inpatient treatment. On April 9, 2002, Mark W. was readmitted to Alton Mental Health Center.

On April 19, 2002, Dr. Kanwal Mahmood, Mark W.'s treating psychiatrist, filed a petition for involuntary treatment, which is the subject of this appeal. The petition sought to force Mark W. to receive antipsychotic medication, Clozaril, on a nonemergency basis. The petition indicated that Mark W. was suffering from schizophrenia, was delusional, and had deteriorated in his ability to care for himself. The petition opined that the administration would make Mark W. "more in touch with reality" so that he could "function in the community." The petition made no mention of his status as unfit to stand trial or a goal

of making him fit for trial. The court ordered the petition set for a hearing on April 25, 2002. The case was continued on Mark W.'s motion to allow him to be examined by a mental health professional not employed by DHS.

On May 16, 2002, Mark W. filed a motion to dismiss, contending, *inter alia*, that section 2—107.1 of the Mental Health Code was unconstitutional as applied to pretrial detainees in general and to him specifically. Mark W. filed three affidavits, which incorporated pertinent documents and exhibits. One of these was a report of Dr. Bryce Sullivan, a licensed clinical psychologist, who examined Mark W. on two occasions. His report provided a review of Mark W.'s mental health records as well as his opinions, within a reasonable degree of psychological certainty, regarding the potential effects of forcing non-emergency drugs upon Mark W.

Dr. Sullivan noted that Mark W. had a history of psychiatric problems which dated back to at least 1990 and also had a history of noncompliance with treatment for psychiatric problems. Dr. Sullivan stated: "[T]he risk of [Mark W.] causing serious physical harm to himself or others, like all clinical predications of dangerousness, is difficult to ascertain. He clearly has the potential of behaving in a manner that could cause injury to others[,] as indicated by the police report of 12/19/99 in which [Mark W.] was alleged to have caused injury to two police officers which required medical attention. However, the mere existence of prior episodes of aggressive behavior does not, by itself, predict future similar behaviors." Dr. Sullivan went on to state that Mark W. "does have the capacity to inflict serious physical harm upon himself or another person" and that a "facility with the authority to administer emergency psychotropic medication and physical restrains [*sic*] would, through their use, be able to protect [Mark W.] and those with whom he has contact from physical harm if [Mark W.] were ever at imminent risk of causing serious physical harm to himself or others."

Dr. Sullivan's report listed the numerous side effects of Clozaril, such as agranulocytosis (a blood disease that can lead to death that is characterized by a reduction in a certain type of white blood cells), seizures, adverse cardiovascular and respiratory effects, neuroleptic malignant syndrome, tardive dyskinesia, drowsiness, sedation, fatigue, dizziness, vertigo, headache, tremor, syncope, restlessness, agitation, rigidity, akathisia, confusion, fatigue, hyperkinesia, amnesia/memory loss, loss of speech, stuttering, and many others. Dr. Sullivan opined that if Mark W. were administered Clozaril, these side effects could impact trial-related issues, such as making it more difficult for Mark W. to focus on the testimony of witnesses at his criminal trial and

making it more difficult for Mark W. to communicate with his counsel and assist his counsel with his defense. Additionally, the side effects could negatively impact jurors' perceptions of his credibility and character and the content of his testimony at his criminal trial. Finally, Dr. Sullivan opined that if Mark W. were administered Clozaril and the effects of the medication resulted, he would appear more sane at his trial than if he did not receive the effects of the medication.

On July 3, 2002, the trial court heard and considered Mark W.'s motion to declare section 2—107.1 of the Mental Health Code unconstitutional as applied to pretrial detainees in general and Mark W. specifically. The trial court found that the statute was constitutional, and the court denied the motion.

The court then proceeded to hear the State's motion for the involuntary administration of psychotropic medication. The parties chose not to present the testimony of any witnesses but simply presented a stipulation regarding what their testimony would be if called to testify. (The content of the stipulation will be provided and discussed later in this opinion.) The trial court then signed an order prepared by the State to involuntarily administer psychotropic medication to Mark W. The order for the administration of psychotropic medication was in effect for 90 days. Mark W. appeals the July 3, 2002, order for the involuntary administration of psychotropic medication.

Subsequent to the filing of the notice of appeal, on February 7, 2003, the trial court in Peoria County found that Mark W. had been in the custody of DHS for one year and that Mark W. remained unfit. A discharge hearing was set on May 9, 2003. On May 9, 2003, Mark W. was found not guilty by reason of insanity on both counts.

## ANALYSIS

In undertaking our review, we begin by finding that this case is moot. The duration of the order entered on July 3, 2002, was 90 days. Mark W. was found not guilty by reason of insanity on May 9, 2003. Because the order for the involuntary administration of psychotropic drugs has expired and Mark W. is no longer a pretrial detainee, any relief we may provide is essentially an advisory opinion. Appellate courts generally lack jurisdiction to render advisory opinions. See *In re Mary Ann P.*, 202 Ill. 2d 393, 401, 781 N.E.2d 237, 242 (2002). However, we find that the constitutional issue raised in Mark W.'s appeal falls within the public-interest exception to the mootness doctrine. The criteria for this exception are (1) the public nature of the issues presented, (2) the desirability of an authoritative determination for the purpose of guiding public officials, and (3) the likelihood that the question will recur. *In re Mary Ann P.*, 202 Ill. 2d at 402, 781 N.E.2d at

242-43; see also *In re Evelyn S.*, 337 Ill. App. 3d 1096, 1101-02, 788 N.E.2d 310, 315 (2003). The procedures courts must follow to authorize the involuntary medication of mental health patients are a matter of "substantial public concern." *In re Mary Ann P.*, 202 Ill. 2d at 402, 781 N.E.2d at 243. Because of the short duration of orders authorizing involuntary treatment, it is likely that the circumstances present in the case at bar will recur without the opportunity to be litigated before the case is rendered moot by the expiration of the order. *In re Mary Ann P.*, 202 Ill. 2d at 402-03, 781 N.E.2d at 243. For those reasons, we deny the State's motion to dismiss, and we will address the constitutional issue raised by Mark W.

■ Initially, we note that in *In re Evelyn S.*, 337 Ill. App. 3d 1096, 788 N.E.2d 310 (2003), we found that the Mental Health Code governs the administration of psychotropic medication to pretrial detainees found unfit to stand trial. *In re Evelyn S.*, 337 Ill. App. 3d at 1102, 788 N.E.2d at 315; see also *In re Robert S.*, 341 Ill. App. 3d 238, 792 N.E.2d 421 (2003). The Code of Criminal Procedure of 1963 includes procedures for the involuntary commitment of defendants found unfit to stand trial, but it does not contain provisions for determining whether the treatment of a pretrial detainee found unfit to stand trial may include the involuntary administration of psychotropic medication. *In re Evelyn S.*, 337 Ill. App. 3d at 1103-04, 788 N.E.2d at 316-17. In the absence of the procedural safeguards provided by the Mental Health Code, there would be no procedural safeguards at all. *In re Robert S.*, 341 Ill. App. 3d at 257, 792 N.E.2d at 436.

■ Next, the statute we are analyzing, section 2—107.1, allows for the involuntary administration of psychotropic medication on a non-emergency basis if certain criteria are established by clear and convincing evidence. At the time of the events herein, the statute provided as follows:

"(A) That the recipient has a serious mental illness or developmental disability.

(B) That because of said mental illness or developmental disability, the recipient exhibits any one of the following: (i) deterioration of his or her ability to function, (ii) suffering, or (iii) threatening behavior.

(C) That the illness or disability has existed for a period marked by the continuing presence of the symptoms set forth in item (B) of this subdivision (4) or the repeated episodic occurrence of these symptoms.

(D) That the benefits of the treatment outweigh the harm.

(E) That the recipient lacks the capacity to make a reasoned decision about the treatment.

(F) That other less restrictive services have been explored and found inappropriate.

(G) If the petition seeks authorization for testing and other procedures, that such testing and procedures are essential for the safe and effective administration of the treatment." 405 ILCS 5/2—107.1(a—5)(4) (West 2002).

Our review of the merits of Mark W.'s unconstitutionality claim is guided by the following principles. "Legislative enactments carry a strong presumption of constitutionality, and a party challenging the constitutionality of a statute has the burden of clearly establishing its invalidity." *People v. Thurow*, 203 Ill. 2d 352, 367, 786 N.E.2d 1019, 1027 (2003); see also *People v. Falbe*, 189 Ill. 2d 635, 727 N.E.2d 200 (2000); *People v. Inghram*, 118 Ill. 2d 140, 514 N.E.2d 977 (1987). It is our duty to affirm a statute's constitutionality if reasonably possible, and any doubts must be resolved in favor of the validity of the challenged enactment. *Falbe*, 189 Ill. 2d at 639, 727 N.E.2d at 204; *Inghram*, 118 Ill. 2d at 146, 514 N.E.2d at 980.

■ The Illinois Supreme Court has previously determined that the provisions of the Mental Health Code authorizing the forced administration of psychotropic medication to a mental patient did not violate the patient's substantive due process rights and that the provision authorizing the forced administration of drugs to patients exhibiting disruptive or threatening behavior was not unconstitutionally vague. *In re C.E.*, 161 Ill. 2d 200, 641 N.E.2d 345 (1994). *In re C.E.* involved an adult male whom the circuit court found subject to involuntary admission to a hospital for treatment and evaluation. C.E.'s guardian filed a petition for declaratory relief and requested that the trial court declare section 2—107.1 unconstitutional. The trial court held that section 2—107.1 was facially unconstitutional and therefore held the section null and void. Upon review, the Illinois Supreme Court stated, "[P]ersons who are mentally ill or developmentally disabled have a Federal constitutionally protected liberty interest to refuse the administration of psychotropic drugs." *In re C.E.*, 161 Ill. 2d at 214, 641 N.E.2d at 351; see *Washington v. Harper*, 494 U.S. 210, 108 L. Ed. 2d 178, 110 S. Ct. 1028 (1990) (the United States Supreme Court held that a state prisoner has a liberty interest, under the due process clause of the fourteenth amendment to the United States Constitution, in refusing the administration of psychotropic medication). After a detailed analysis of how section 2—107.1 addresses the State's concern for the well-being of those who are not able to make a rational choice regarding the administration of psychtropic medication, the court concluded, "[S]ection 2—107.1 does not, on its face, impermissibly burden the Federal constitutional liberty interests of C.E." *In re*

*C.E.*, 161 Ill. 2d at 219, 641 N.E.2d at 354. As a result, the court found that section 2—107.1 was constitutional as applied to C.E. and similarly situated individuals.

In this case, Mark W. contends that when applied to him and other pretrial detainees, section 2—107.1 neither requires nor allows any inquiry whatsoever into whether its application would force a respondent to take medication that would, in effect, involuntarily sacrifice his right to a fair trial. Mark W. contends that the side effects from the medication may make it difficult, if not impossible, for him to focus on the testimony of witnesses or to communicate and assist his counsel, the medication would negatively impact jurors' perceptions of his credibility and character, and finally, the medication could rob him of the opportunity to present an effective insanity defense.

After Mark W.'s argument was presented to this court, the United Supreme Court rendered its opinion in *Sell v. United States*, 539 U.S. 166, 156 L. Ed. 2d 197, 123 S. Ct. 2174 (2003), holding that the government may involuntarily administer antipsychotic drugs to a mentally ill defendant to render that defendant competent to stand trial under certain "rare" circumstances. The Court in *Sell* recognized that it previously had held that a defendant has a constitutionally protected liberty interest in avoiding the involuntary administration of psychotropic drugs. *Sell*, 539 U.S. at 178-79, 156 L. Ed. 2d at 211, 123 S. Ct. at 2183, citing *Riggins v. Nevada*, 504 U.S. 127, 118 L. Ed. 2d 479, 112 S. Ct. 1810 (1992). The Court found that only an " 'essential' " or " 'overriding' " state interest could overcome this liberty interest. *Sell*, 539 U.S. at 178-79, 156 L. Ed. 2d at 211, 123 S. Ct. at 2183, quoting *Riggins*, 504 U.S. at 135, 118 L. Ed. 2d at 489, 112 S. Ct. at 1815. The Court stated:

"[T]he Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests.

This standard will permit involuntary administration of drugs solely for trial competence purposes in certain instances." *Sell*, 539 U.S. at 179-80, 156 L. Ed. 2d at 211, 123 S. Ct. at 2184.

The Court in *Sell* went on to state:

"[T]he court applying these standards is seeking to determine whether involuntary administration of drugs is necessary significantly to further a particular governmental interest, namely, the

interest in rendering the defendant *competent to stand trial*. A court need not consider whether to allow forced medication for that kind of purpose, if forced medication is warranted for a *different* purpose, such as the purposes set out in *Harper* related to the individual's dangerousness[ ] or purposes related to the individual's own interests where refusal to take drugs puts his health gravely at risk. [Citation.] There are often strong reasons for a court to determine whether forced administration of drugs can be justified on these alternative grounds *before* turning to the trial competence question." (Emphasis in original.) *Sell*, 539 U.S. at 181-82, 156 L. Ed. 2d at 213, 123 S. Ct. at 2185.

See also *In re Robert S.*, 341 Ill. App. 3d at 258, 792 N.E.2d at 436.

We can only assume that Mark W.'s argument after *Sell* would be that section 2—107.1 is unconstitutional because it does not "require or allow for" the trial court to consider the protections provided for pretrial criminal defendants contained in *Sell*. The court in *In re C.E.* provides the necessary guidance to resolve this issue. The respondent in *In re C.E.* contended that section 2—107.1 was unconstitutional because it did not specifically require the application of the "substituted judgment" test. *In re C.E.*, 161 Ill. 2d at 219, 641 N.E.2d at 354. The "substituted judgment" analysis was adopted in *In re Estate of Longeway*, 133 Ill. 2d 33, 549 N.E.2d 292 (1989), and *In re Estate of Greenspan*, 137 Ill. 2d 1, 558 N.E.2d 1194 (1990), in which the court found that in certain specifically limited circumstances, a guardian may lawfully exercise a ward's common law right to refuse the administration of life-sustaining medical treatment. *In re C.E.*, 161 Ill. 2d at 220, 641 N.E.2d at 354. Under the substituted judgment analysis, the " 'surrogate decision-maker attempts to establish, with as much accuracy as possible, what decision the patient would make if he were competent to do so.' " *In re C.E.*, 161 Ill. 2d at 220, 641 N.E.2d at 354, quoting *In re Estate of Longeway*, 133 Ill. 2d at 49, 549 N.E.2d at 299. In *In re C.E.* the court observed as follows:

"Initially, we note that section 2—107.1 does not explicitly adopt the 'best interests' or the 'substituted judgment' test. Neither phrase appears explicitly or verbatim in the language of section 2—107.1[.] We also find it noteworthy that section 2—107.1, by its terms, does not foreclose the court's consideration of the wishes expressed by the mental health recipient while the recipient was competent. Section 2—107.1 requires proof that the benefits of the psychotropic medication will outweigh its harms, and that other treatment alternatives have been considered and found ineffective. (405 ILCS 5/2—107.1(d)(4), (d)(5) (West 1992).)" *In re C.E.*, 161 Ill. 2d at 220, 641 N.E.2d at 354.

The court went on to find as follows:

"Section 2—107.1 requires a showing, by clear and convincing proof, that the involuntary administration of the medication will outweigh the harms that may be caused by the medication. (405 ILCS 5/2—107.1(d)(4) (West 1992).) The recipient's subjective perceptions may well be an integral part of this proof. Thus, the factors specified in the statute may often require that the trial court take into account the subjective attitudes of the recipient while the recipient was competent.

Consequently, we conclude that section 2—107.1 permits the court's consideration of the 'substituted judgment' of the mental health recipient, and that the court respect the wishes expressed by the mental health patient when the patient was capable of making rational treatment decisions in his own behalf." *In re C.E.*, 161 Ill. 2d at 221, 641 N.E.2d at 355.

As a result, the court found no error, "under Federal constitutional law, in the legislature's failure to expressly include the 'substituted judgment' test in section 2—107.1." *In re C.E.*, 161 Ill. 2d at 224, 641 N.E.2d at 356.

■ Consistent with the reasoning in *In re C.E.*, we find that section 2—107.1 is constitutional. Section 2—107.1(a—5)(4)(D) (405 ILCS 5/2—107.1(a—5)(4)(D) (West 2002)) (which requires a showing, by clear and convincing proof, that the involuntary administration of the medication will outweigh the harms that may be caused by the medication) allows the trial court to consider the factors identified in *Sell* when deciding whether to order the involuntary administration of psychotropic drugs to a pretrial defendant. As Mark W. correctly contends, one of the harms that may be caused by the medication is the involuntary sacrifice of his right to a fair trial.

In compliance with *Sell*, when considering whether to involuntarily administer psychotropic drugs to a mentally ill and unfit person with pending criminal charges, the trial judge must consider the following factors: (1) that important governmental interests are at stake, (2) that involuntary medication will significantly further those concomitant state interests, (3) that involuntary medication is necessary to further those state interests, and (4) that the administration of the drugs is medically appropriate, *i.e.*, in the patient's best medical interest in light of his medical condition. *Sell*, 539 U.S. at 180-81, 156 L. Ed. 2d at 211-12, 123 S. Ct. at 2184-85; see also *United States v. Gomes*, 305 F. Supp. 2d 158 (D. Conn. 2004). Alternatively, the United States Supreme Court has directed trial courts to determine whether forced medication may be warranted for a purpose other than returning a defendant to competence to stand trial, such as "purposes *** related to the individual's dangerousness[ ] or purposes related to the

individual's own interests where refusal to take drugs puts his health gravely at risk." *Sell*, 539 U.S. at 182, 156 L. Ed. 2d at 213, 123 S. Ct. at 2185; see also *Gomes*, 305 F. Supp. 2d 158. The court's findings must be determined on the basis of current circumstances, because the defendant's medical condition may have changed over time. *Sell*, 539 U.S. 166, 156 L. Ed. 2d 197, 123 S. Ct. 2174. Given our interpretation of section 2—107.1(a—5)(4)(D), we find that the trial judge was correct in finding that section 2—107.1 is constitutional as applied to pretrial criminal defendants and Mark W. specifically.

After the constitutional issue was decided by the trial judge, the court proceeded to the hearing on the petition to involuntarily administer psychotropic drugs to Mark W. Rather than call witnesses before the court, the parties chose to present evidence in the form of a stipulation regarding what the witnesses would testify to if called. The stipulation was presented to the court as follows:

"[Defense Attorney:] I've discussed the situation with [Mark W.] several times, and based on his interest in not wanting to be called to testify and not wanting to have to testify, he's going to follow my advice and not testify in this proceeding. Based on that, we'll have no evidence to dispute the [S]tate's witnesses, so we're willing to stipulate that the State would offer evidence that Mark has a serious mental illness, that because of his illness he suffers by suffering from pervasive delusions, [that] his symptoms have persisted for a marked period of time, that they believe that the benefits of the treatment would outweigh the harm, that he lacks the capacity to make a reasoned decision about his treatment, and that less restrictive services are inappropriate.

We don't necessarily agree with all of that evidence, but we stipulate that it will be presented, and we have nothing to controvert it.

THE COURT: You're not going to rebut it?

[Defense Attorney:] So based on that, even though I reserve the argument that [section] 2—107.1 should not apply, under [section] 2—107.1 an order certainly could and should be entered.

THE COURT: Thank you, Mr. Rothert. Is that accurate, Mr. Barberis?

[Assistant State's Attorney:] The State would accept his stipulation, and based upon the order that we presented, we believe that if called to testify, the State [*sic*] would be able to call the treating physician, Dr. Mahmood, and that we would be able to establish that the requested psychotropic medications are needed, and that the Court would concur and enter the order.

\* \* \*

THE COURT: All right. Under the circumstances, the Court will

find that [Mark W.] is a person who is subject to the involuntary administration of psychotropic medication, that being [C]lozaril up to a maximum of 900 milligrams per day, and that the [C]lozaril laboratory examinations are also authorized."

Initially, we observe that although stipulations are to be encouraged, clarity and precision of thought should be encouraged as well. "These goals can be obtained by ensuring that the stipulation to which the parties agree is both accurate and complete." *People v. Durgan*, 346 Ill. App. 3d 1121, 1132, 806 N.E.2d 1233, 1242 (2004). The stipulation does not include the report of Dr. Sullivan and is extremely general regarding Dr. Mahmood's testimony. Of course, the parties and the court did not have the benefit of the *Sell* decision when this stipulation was agreed to by the parties and accepted by the court. The stipulation fails to adequately address the factors identified in *Sell*—(1) that important governmental interests are at stake, (2) that involuntary medication will significantly further those concomitant state interests, (3) that involuntary medication is necessary to further those state interests, and (4) that the administration of the drugs is medically appropriate, *i.e.*, in the patient's best medical interest in light of his medical condition (*Sell*, 539 U.S. at 180-81, 156 L. Ed. 2d at 211-12, 123 S. Ct. at 2184-85)—which are to be considered when a court decides whether an individual charged with a crime is, prior to trial, subject to the involuntary administration of psychotropic drugs. In addition, as we now know, forced medication may also be warranted for a purpose other than returning a defendant to competence to stand trial, such as "purposes *** related to the individual's dangerousness[ ] or purposes related to the individual's own interests where refusal to take drugs puts his health gravely at risk." *Sell*, 539 U.S. at 182, 156 L. Ed. 2d at 213, 123 S. Ct. at 2185. The stipulation also fails to address this alternate ground for granting the State's petition. As a result, we find that it was manifestly erroneous for the trial court to grant the State's petition to involuntarily administer psychotropic medication to Mark W., considering that, at the time, he was charged with a criminal offense and he was awaiting trial. See *In re Jennifer H.*, 333 Ill. App. 3d 427, 430-31, 775 N.E.2d 616, 619 (2002) (an appellate court will reverse a trial court's order to involuntarily administer psychotropic medications only if it is manifestly erroneous).

## CONCLUSION

For the foregoing reasons, we deny the motion to dismiss this appeal as moot, we affirm the trial court's finding that section 2—107.1 of the Mental Health Code is constitutional as applied to pretrial detainees generally and to Mark W. specifically, but we reverse the order granting the State's request to involuntarily administer psycho-

tropic medication to Mark W. Because of Mark W.'s current status and the duration of the order, there is no need to remand this matter.

Affirmed in part and reversed in part.

CHAPMAN, P.J., and KUEHN, J., concur.