# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Johnson*, 2012 IL App (5th) 070573

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES JOHNSON, Defendant-Appellant. |
| District & No. | Fifth District<br>Docket No. 5-07-0573 |
| Filed | February 3, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where defendant was found not guilty of burglary and retail theft by reason of insanity, the order committing him to inpatient treatment at a secure facility was affirmed, notwithstanding his contention that his stipulation that a psychiatrist would testify in accordance with his report constituted a functional waiver of the entire hearing on whether such treatment was necessary that was not allowed under the Mental Health Code, since defendant did not waive all of the rights associated with the hearing, he waived only the right to have the psychiatrist's testimony as to the facts in his report presented in open court, he did not agree to be voluntarily admitted, he could not logically be admitted on a voluntary basis unless the court first found that he did not need continued care in an inpatient setting, and the stipulation was sufficiently specific to support a finding that he required treatment on an inpatient basis by clear and convincing evidence. |
| Decision Under Review | Appeal from the Circuit Court of St. Clair County, No. 05-CF-1915; the Hon. Annette A. Eckert, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Veronique Baker and Barbara A. Goeben, both of Guardianship and
Advocacy Commission, of Alton, for appellant.

Brendan Kelly, State's Attorney, of Belleville (Patrick Delfino, Stephen
E. Norris, and Patrick D. Daly, all of State's Attorneys Appellate
Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE CHAPMAN delivered the judgment of the court, with opinion.
Justices Welch and Wexstten concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant, James Johnson, was charged with burglary and retail theft, and he was found not guilty by reason of insanity. He appeals an order committing him to inpatient treatment at a secure facility. He argues that his stipulation that a psychiatrist would testify in accordance with his report constituted a functional waiver of the entire hearing, something that is not permissible under the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/1-100 *et seq.* (West 2006)). We affirm.

¶ 2    The defendant was charged with burglary and retail theft after stealing rings and pendants valued at approximately $300 from a mall jewelry kiosk. He was initially found unfit to stand trial; however, a little over a year later, he was found fit to stand trial. Based on stipulated facts, the court found the defendant not guilty by reason of insanity and set the matter for a hearing to determine whether he was still in need of psychiatric care. See 730 ILCS 5/5-2-4(a) (West 2006).

¶ 3    Prior to the hearing, Dr. Jagannath Patil filed a report with the court. Dr. Patil is a psychiatrist who examined the defendant. In his report, Dr. Patil diagnosed the defendant as suffering from schizoaffective disorder, bipolar type. He noted that the defendant's symptoms included both grandiose and paranoid delusions as well as auditory hallucinations. He went on to state that the defendant had acted on these delusions and continued to do so. This has included acts of violence. As a result, the defendant had been continually institutionalized for nearly all of the previous 12 years and was required to register as a sex offender. The report noted that the defendant had no awareness of his mental illness, but was compliant with medications and received some benefits from the medications and from treatment in the inpatient setting. Dr. Patil noted that the defendant believed that his medications helped him to stay calm and sleep better, but did not believe they provided any other benefits. Dr. Patil recommended continued inpatient treatment for the defendant.

¶ 4    At the hearing, the parties focused their arguments on the proper *Thiem* date for the defendant. See *People v. Thiem*, 82 Ill. App. 3d 956, 962, 403 N.E.2d 647, 652 (1980) (explaining that the court must specify the maximum period of commitment, which cannot

-2-

exceed the maximum sentence the defendant could have received had he been convicted on the most serious charge against him). After ruling on the *Thiem* date, the court asked the attorneys for both parties, "Would you stipulate to the report, please, of Dr. Patil dated February 28, 2007?" The court noted that if the parties stipulated to the report, "it would be appropriate for the court then at this time to make an order with regards to commitment and also *in-patient status or out-patient status*." (Emphasis added.) Both attorneys indicated that they had previously stipulated to the report and did not object to the court entering it into evidence. The court then admitted the report into evidence.

¶ 5    Neither party offered any argument related to whether the defendant was in need of treatment on an inpatient basis. However, counsel for the defendant informed the court that the defendant's main concern was that he continue to receive certain privileges, including being allowed an "unsupervised building pass." The court stated that such privileges were up to the discretion of the defendant's treatment team and that the only decision for the court to make was "whether *** there is to be in-patient or out-patient [treatment] and whether involuntary commitment should be a part of [the] order." The court then noted that it had previously read Dr. Patil's report and found the defendant to be in need of treatment on an inpatient basis. The court entered an order to that effect. The State filed a motion to reconsider the court's ruling on the *Thiem* date, which the court granted. This appeal followed.

¶ 6    On appeal, the defendant argues that (1) because he stipulated to all of the evidence needed to support the determination that he was subject to commitment, the stipulation was tantamount to a waiver of the hearing, (2) the Mental Health Code does not contemplate a waiver of hearings in their entirety (see *In re Michael H.*, 392 Ill. App. 3d 965, 979, 912 N.E.2d 703, 714 (2009)), and (3) even assuming waiver is permissible, the record must demonstrate that the waiver was knowing and voluntary. He further contends that counsel's decision to stipulate to all of the evidence necessary to commit him constituted ineffective assistance of counsel.

¶ 7    Before addressing these arguments, a brief overview of the procedures to be followed after a finding of not guilty by reason of insanity would be useful. Once a verdict of not guilty by reason of insanity is entered, the court must hold a hearing within 30 days to determine whether the defendant is currently in need of treatment and, if so, whether he needs treatment on an inpatient or outpatient basis. 730 ILCS 5/5-2-4(a) (West 2006). The hearing is governed by the procedures outlined in the Mental Health Code. 730 ILCS 5/5-2-4(a) (West 2006). Thus, the defendant cannot be found subject to involuntary commitment without the testimony of at least one psychiatrist, clinical psychologist, or clinical social worker who has actually examined him. 405 ILCS 5/3-807 (West 2006). The court must find that the defendant "is reasonably expected to inflict serious physical harm upon himself or another" and that he either needs care on an inpatient basis or would benefit from such care. 730 ILCS 5/5-2-4(a)(1)(B) (West 2006). This finding must be supported by clear and convincing evidence. 730 ILCS 5/5-2-4(g) (West 2006); see also 405 ILCS 5/3-808 (West 2006).

¶ 8    There are two key differences, however. An initial order admitting a patient to a facility in civil involuntary commitment proceedings expires after 90 days, with subsequent orders

lasting for 180 days. *In re Michael H.*, 392 Ill. App. 3d at 971, 912 N.E.2d at 708 (citing 405 ILCS 5/3-813 (West 2006)). Orders for continuing civil commitment must comply with all of the procedural requirements applicable to initial orders, including proof by clear and convincing evidence that the respondent meets the criteria for involuntary admission. *In re Michael H.*, 392 Ill. App. 3d at 971, 912 N.E.2d at 708 (citing 405 ILCS 5/3-813 (West 2006)).

¶ 9        By contrast, an initial order involuntarily committing a patient after a finding of not guilty by reason of insanity is for an "indefinite period" of time up to the length of the maximum sentence that could be imposed for the most serious offense charged. 730 ILCS 5/5-2-4(b) (West 2006). The defendant can be released prior to the expiration of the initial order one of two ways. The director of the facility can notify the court that the director has determined that the defendant no longer needs to be treated in an inpatient setting. 730 ILCS 5/5-2-4(d) (West 2006). The defendant can file his own petition to be discharged or moved to a less secure facility. 730 ILCS 5/5-2-4(e) (West 2006). In either case, the court must hold a hearing and its findings must be supported by clear and convincing evidence. 730 ILCS 5/5-2-4(g) (West 2006).

¶ 10       In addition, a civilly committed patient must be treated in the least restrictive setting appropriate (405 ILCS 5/3-811 (West 2006)), while a patient admitted after a finding of not guilty by reason of insanity is to be admitted to a secure facility unless there are compelling reasons why this is not necessary (730 ILCS 5/5-2-4(a) (West 2006)).

¶ 11       The primary issue in this case is whether the hearing conducted in this matter complied with section 3-807 of the Mental Health Code (405 ILCS 5/3-807 (West 2006)). As previously mentioned, that section provides that a respondent cannot be found subject to involuntary commitment without the testimony of at least one psychiatrist, clinical psychologist, or clinical social worker who actually examined him. The statute expressly provides, however, that this requirement may be waived with the approval of the court. 405 ILCS 5/3-807 (West 2006). Here, by stipulating that Dr. Patil would testify in accordance with his report and agreeing to have the report admitted into evidence in lieu of Dr. Patil's live testimony, the defendant waived the requirement of live testimony. As previously discussed, the defendant agreed to this stipulation through his attorney. The defendant, who was present at the hearing, remained silent when his attorney agreed to the stipulation and presented the defendant's concerns about privileges to the court. On appeal, he contends that under the circumstances of this case, this was not sufficient.

¶ 12       We note that there are very few cases that deal with the question of what constitutes a sufficient waiver of the requirement of testimony. Those cases that have considered the question have all addressed waiver of the requirement that the witness who testifies actually examine the respondent. See, *e.g.*, *In re Michelle J.*, 209 Ill. 2d 428, 434, 808 N.E.2d 987, 990 (2004); *In re Barbara H.*, 183 Ill. 2d 482, 497, 702 N.E.2d 555, 562 (1998); *In re James*, 67 Ill. App. 3d 49, 51, 384 N.E.2d 573, 575 (1978). We are aware of no cases addressing waiver of the requirement that there be live testimony, and both parties acknowledge the lack of case law directly on point.

¶ 13       The defendant points to a line of criminal cases which holds that if a defendant stipulates

-4-

to all of the evidence necessary to convict him, his stipulation is the functional equivalent of a guilty plea. See *People v. Clendenin*, 238 Ill. 2d 302, 319-20, 939 N.E.2d 310, 320 (2010) (citing *People v. Campbell*, 208 Ill. 2d 203, 218, 802 N.E.2d 1205, 1213 (2003)). He argues that the stipulation here was to all the evidence the State needed to find him subject to involuntary commitment. He argues, by analogy, that the stipulation in this case was the functional equivalent of a waiver of the entire commitment hearing. This court has previously held that the Mental Health Code does not contemplate the waiver of the entire hearing. *In re Michael H.*, 392 Ill. App. 3d at 979, 912 N.E.2d at 714. The defendant contends that, under *In re Michael H.*, he cannot effectively waive the entire hearing at all. Alternatively, he argues that, similar to a criminal defendant, he may only stipulate to all of the evidence necessary to find him subject to involuntary commitment if he makes a personal waiver that is knowing and voluntary. For the reasons that follow, we do not agree.

¶ 14     As a starting point, the defendant acknowledges, as he must, that, even in the criminal setting, the decision to stipulate to evidence is generally a tactical decision that can be made by a defendant's attorney without any indication in the record that the defendant personally chose to waive his constitutional right to confront particular witnesses and without any indication that this waiver was knowing and voluntary. *Clendenin*, 238 Ill. 2d at 319-21, 939 N.E.2d at 320-21. Our supreme court has explicitly stated that cases such as *Clendenin* and *Campbell*, relied upon by the defendant, carve out a narrow exception to this general rule. See *Clendenin*, 238 Ill. 2d at 319, 939 N.E.2d at 320. It is also worth noting that this court has indicated in *dicta* that a respondent may validly stipulate to evidence in a mental health proceeding. See *In re Mark W.*, 348 Ill. App. 3d 1065, 1076, 811 N.E.2d 767, 775 (2004). The rationale underlying the supreme court's rulings in *Clendenin* and *Campbell* is not applicable here, nor is the rationale underlying our decision in *In re Michael H.* We thus find no compelling reason to depart from these general principles.

¶ 15     In *Clendenin*, the supreme court explained that there are five decisions that a criminal defendant has a right to make personally: (1) whether to plead guilty, (2) whether to waive the right to a trial by jury, (3) whether to testify, (4) whether to appeal, and (5) whether to request jury instructions on lesser-included defenses. *Clendenin*, 238 Ill. 2d at 318-19, 939 N.E.2d at 320. All other decisions–including, most notably, the decision of " ' "whether and how to conduct cross-examination" ' "–are matters of trial strategy on which the "ultimate decision" is left to defense counsel's judgment. *Clendenin*, 238 Ill. 2d at 319, 939 N.E.2d at 320 (quoting *Campbell*, 208 Ill. 2d at 210, 802 N.E.2d at 1209, quoting *People v. Ramey*, 152 Ill. 2d 41, 54, 604 N.E.2d 275, 281 (1992)). This is so despite the fact that a defendant in a criminal trial has a constitutional right to confront and cross-examine witnesses against him. See *People v. Miller*, 311 Ill. App. 3d 772, 785, 725 N.E.2d 48, 58 (2000) (citing *Chapman v. California*, 386 U.S. 18 (1967)). The sole reason our supreme court carved out an exception for cases where all evidence was the subject of a stipulation was its concern with the defendant's right to personally make the decision to plead guilty. *Campbell*, 208 Ill. 2d at 218-19, 802 N.E.2d at 1213-14. This concern is not implicated in mental health proceedings where there is no plea to be entered.

¶ 16     This does not mean that the stipulation raises no due process concerns. Although there is no constitutional right to confront and cross-examine witnesses in a mental health case,

there is a statutory right to do so. See 730 ILCS 5/5-2-4(g) (West 2006); 405 ILCS 5/3-807 (West 2006). In addition, there are general due process considerations. Our courts have long recognized that involuntary mental health care involves a " 'massive curtailment of liberty.' " *In re Barbara H.*, 183 Ill. 2d at 496, 702 N.E.2d at 561 (quoting *Vitek v. Jones*, 445 U.S. 480, 491 (1980)). As such, patients in mental health proceedings have a fundamental liberty interest in not being subjected to treatment against their will absent compelling reasons. *In re Evelyn S.*, 337 Ill. App. 3d 1096, 1102-03, 788 N.E.2d 310, 316 (2003).

¶ 17    Due process, however, is a "flexible concept," and the precise procedures necessary to afford due process depend on both the nature of the proceedings and the private interest affected. *People v. Lindsey*, 199 Ill. 2d 460, 472, 771 N.E.2d 399, 409 (2002). The United States Supreme Court has held (in the context of determining the appropriate burden of proof in a mental health case) that civil commitment proceedings required a less rigorous standard than criminal proceedings. The Court reasoned that this is so, in part, because in mental health proceedings, "state power is not exercised in a punitive sense." *Addington v. Texas*, 441 U.S. 418, 428 (1979). In light of this, we believe that compliance with the procedures outlined in the Mental Health Code and the statute governing proceedings after a finding of not guilty by reason of insanity is sufficient to protect the defendant's due process rights. See *In re Michael H.*, 392 Ill. App. 3d at 972, 912 N.E.2d at 709 (explaining that the provisions of the Mental Health Code are designed to protect a patient's right to due process).

¶ 18    The defendant argues that under this court's decision in *In re Michael H.*, the procedures followed in this case did not comply with the requirements of the Mental Health Code. We find this case distinguishable from *In re Michael H.* and do not agree.

¶ 19    There, the respondent's attorney informed the court that his client " 'indicated he would give up his right to the hearing scheduled for [that] morning.' " *In re Michael H.*, 392 Ill. App. 3d at 968, 912 N.E.2d at 705-06. The court asked only two questions of the respondent before entering an order involuntarily admitting him to a facility. The court first asked if the respondent understood what his attorney had told the court, to which he replied, " 'Yeah. He said I would be here for another six months.' " *In re Michael H.*, 392 Ill. App. 3d at 968, 912 N.E.2d at 706. The court then asked if the respondent objected to the entry of an order finding him subject to involuntary admission, and the respondent indicated that he had no objection. The court found that he had knowingly and voluntarily waived his right to a hearing. *In re Michael H.*, 392 Ill. App. 3d at 968, 912 N.E.2d at 706. This brief discussion made up the entire hearing. *In re Michael H.*, 392 Ill. App. 3d at 968, 912 N.E.2d at 705. Unlike what occurred in the instant case, the court did not admit into evidence any reports prepared by members of the respondent's treatment team, nor did the court consider any factual issues at all.

¶ 20    In finding that this violated the provisions of the Mental Health Code, this court had two primary concerns. One was the lack of any indication that the respondent's waiver was, in fact, knowing and voluntary. We noted that the respondent was never asked if he understood what he was giving up by agreeing to "waive his right to *all* the applicable procedural safeguards" involved in having a hearing. (Emphasis in original.) *In re Michael H.*, 392 Ill. App. 3d at 975, 912 N.E.2d at 711. He was never asked if he understood that the State had to meet a very high standard of proof if he did not agree to waive the hearing, and he was

never asked if he understood that he had the option to ask to be voluntarily admitted and have the petition for involuntary admission dismissed. *In re Michael H.*, 392 Ill. App. 3d at 975, 912 N.E.2d at 711.

¶ 21   Here, the defendant's main contention is likewise that the record does not establish that his waiver was knowing and voluntary. However, there is one key distinction. Here, the defendant has not waived *all* of the rights associated with a hearing. Significantly, he has not waived the right to require clear and convincing evidence that he continues to be in need of treatment at a secure inpatient facility. Dr. Patil's report was entered into evidence and considered by the court in reaching that finding. As we will discuss in more detail later in this opinion, Dr. Patil's report provides a sufficient factual basis to support the court's finding by clear and convincing evidence.

¶ 22   Here, the defendant has waived only the right to have Dr. Patil's testimony to the facts in his report presented in open court, something expressly permitted by statute. See 405 ILCS 5/3-807 (West 2006). This is not a distinction without a difference. In *In re Michael H.*, the respondent noted that while the Mental Health Code provides that each of the individual procedural safeguards associated with mental health hearings can be waived, it makes no provision for the complete waiver of a hearing in its entirety. *In re Michael H.*, 392 Ill. App. 3d at 972, 912 N.E.2d at 709. Although we did not discuss this argument in great detail, we did emphasize the fact that the respondent there was giving up all of the rights associated with a hearing (*In re Michael H.*, 392 Ill. App. 3d at 975, 912 N.E.2d at 711), including the right to require the State to provide clear and convincing evidence (*In re Michael H.*, 392 Ill. App. 3d at 976, 912 N.E.2d at 712).

¶ 23   Our second concern in *In re Michael H.* was the fact that the court's decision to allow the respondent to waive his entire hearing was inconsistent with the provisions in the Mental Health Code governing voluntary admissions. *In re Michael H.*, 392 Ill. App. 3d at 978, 912 N.E.2d at 714. We explained that a patient who is voluntarily admitted to a facility has the right to seek an immediate discharge at any time. *In re Michael H.*, 392 Ill. App. 3d at 973, 912 N.E.2d at 710 (citing 405 ILCS 5/3-403 (West 2006)). We further explained that if a respondent asks to be admitted to a facility as a voluntary patient while a petition for involuntary admission is pending, the court may either dismiss the pending petition immediately and treat the respondent as a voluntarily admitted patient or require proof that dismissal is in the best interests of the public and the respondent. *In re Michael H.*, 392 Ill. App. 3d at 973, 912 N.E.2d at 710 (citing 405 ILCS 5/3-801 (West 2006)). If the court decides not to dismiss the petition, we explained, the petition "remains pending and is subject to all the procedural safeguards ordinarily applicable." *In re Michael H.*, 392 Ill. App. 3d at 978-79, 912 N.E.2d at 714. We concluded that "[t]hese procedures make it clear that a respondent's agreement to receive inpatient treatment cannot be used as an end-run around the requirements imposed where a respondent is alleged to be subject to involuntary admission." *In re Michael H.*, 392 Ill. App. 3d at 979, 912 N.E.2d at 714.

¶ 24   These concerns are not implicated in the instant case. The defendant did not waive his entire hearing and did not specifically agree to be voluntarily admitted. We also note that because this case involves proceedings after a finding of not guilty by reason of insanity, the defendant cannot logically be admitted on a voluntary basis unless the court first finds that

he is not in need of continued care in an inpatient setting. Nothing in *In re Michael H.* requires us to equate the defendant's stipulation to Dr. Patil's report with a waiver of the entire hearing.

¶ 25    The defendant raises two additional issues. First, he contends that the stipulation here, like the stipulation at issue in *In re Mark W.*, is not sufficiently specific to support a finding that he requires treatment on an inpatient basis by clear and convincing evidence. We disagree.

¶ 26    As previously discussed, the report of Dr. Patil was admitted into evidence. Dr. Patil examined the defendant and prepared the report just weeks before the hearing. That report provided detailed descriptions of the defendant's symptoms and the way in which those symptoms impacted his behavior. Significantly, the report states that the defendant suffers from auditory hallucinations and grandiose and paranoid delusions, that he acts on his delusions, that he has engaged in acts of aggression due to his delusions, and that he would benefit from continued treatment in an inpatient setting.

¶ 27    In the *In re Mark W.* case, by contrast, the respondent stipulated that the State would present testimony that he met the statutory criteria for the involuntary administration of psychotropic medication. He did not, however, stipulate that the State's witness would testify to any specific underlying facts to support this conclusion. *In re Mark W.*, 348 Ill. App. 3d at 1075, 811 N.E.2d at 775. Significantly, the stipulation in that case did *not* include the treating psychiatrist's report. *In re Mark W.*, 348 Ill. App. 3d at 1076, 811 N.E.2d at 775. This court has found even live testimony similar to the stipulation in *In re Mark W.* insufficient to support a finding by clear and convincing evidence that a respondent is subject to involuntary admission. See *In re Joseph M.*, 405 Ill. App. 3d 1167, 1176, 939 N.E.2d 959, 967 (2010); *In re Phillip E.*, 385 Ill. App. 3d 278, 284-85, 895 N.E.2d 33, 41 (2008). The stipulation here does not suffer from the same infirmity. We thus find that it was sufficiently specific to support the court's order.

¶ 28    The defendant finally contends that he did not receive effective assistance of counsel due to counsel's decision to stipulate to the report. Again, we disagree. To prevail on this claim, the defendant must demonstrate both that counsel's performance was deficient and that it caused "substantial prejudice" to the defendant such that "the result would probably have been different." *People v. Williams*, 140 Ill. App. 3d 216, 228, 488 N.E.2d 649, 657 (1986). We find that the defendant fails to meet the second part of this test.

¶ 29    Here, the report of Dr. Patil was entered into evidence and considered by the court. As we have just concluded, the report provided sufficient factual detail to find the defendant in need of inpatient care. It is true that had Dr. Patil been called to testify at the hearing, his testimony would have been subject to cross-examination. While it is theoretically possible that the court could have found Dr. Patil not to be a credible witness under such circumstances, that possibility is speculative.

¶ 30    We also reiterate that the defendant was present at the hearing and did not object to the stipulation or entry into evidence of the report. In addition, counsel informed the court that the defendant's primary concern was with retaining certain privileges he enjoyed at the facility. Thus, although the record does not affirmatively establish that the defendant

understood that counsel was waiving his right to confront and cross-examine Dr. Patil (something we have already found was not required), it appears that counsel consulted with the defendant and presented to the court those matters that the defendant indicated were of greatest concern to him. In any case, we do not believe the defendant has met his burden of showing that the result probably would have been different had counsel not agreed to the stipulation. We thus reject his claim of ineffective assistance.

¶ 31    For the foregoing reasons, we affirm the court's order.

¶ 32    Affirmed.