# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Avery S.*, 2012 IL App (5th) 100565

---

| | |
|---|---|
| Appellate Court Caption | *In re* AVERY S., Alleged to Be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Avery S., Respondent-Appellant). |
| District & No. | Fifth District<br>Docket No. 5-10-0565 |
| Filed | June 28, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A stipulation that was sufficient to establish by clear and convincing evidence that respondent was subject to involuntary admission on the ground that he had a mental illness that rendered him unable to provide for his basic physical needs so as to guard himself from serious harm supported his admission, especially when the procedures followed did not violate his rights or the statutory scheme of the Mental Health and Developmental Disabilities Code regarding agreed orders and he had a history of disorders and prior admissions. |
| Decision Under Review | Appeal from the Circuit Court of Randolph County, No. 10-MH-131; the Hon. Richard A. Brown, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Barbara A. Goeben and Veronique Baker, both of Guardianship and Advocacy Commission, of Alton, for appellant. |
|---|---|
| | Randall Rodewald, State's Attorney, of Chester (Patrick Delfino, Stephen E. Norris, and Rebecca E. McCormick, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE WELCH delivered the judgment of the court, with opinion. Justices Goldenhersh and Wexstten concurred in the judgment and opinion. |

**OPINION**

¶ 1    Avery S. (the appellant) appeals from an order entered by the circuit court of Randolph County on October 20, 2010, which found him subject to involuntary admission to a Department of Human Services mental health or developmental center. The circuit court's order found that the appellant was subject to involuntary admission because he was a person with a mental illness who, because of that illness, was (1) reasonably expected to engage in dangerous conduct which may include threatening behavior or conduct that places himself or another in reasonable expectation of being harmed, (2) unable to provide for his basic physical needs so as to guard himself from serious harm, and (3) unable to understand his need for treatment and who, if not treated, is reasonably expected to suffer or continue to suffer mental deterioration or emotional deterioration, or both, to the point that the person is reasonably expected to engage in dangerous conduct.

¶ 2    Preliminarily, we address a point on which the parties agree. The circuit court's findings derive from section 1-119 of the Mental Health and Developmental Disabilities Code (the Code), which defined the term " '[p]erson subject to involuntary admission on an inpatient basis.' " 405 ILCS 5/1-119 (West 2010). Prior to the entry of the court's order, the term "dangerous conduct" as used in section 1-119 was declared to be unconstitutionally vague and violative of the substantive guarantees of due process. *In re Torski C.*, 395 Ill. App. 3d 1010, 1027 (2009). Accordingly, the first and third of the circuit court's findings with respect to the appellant being a person subject to involuntary admission are void, and only the second of those findings remains valid. Thus, we address ourselves only to the circuit court's finding that the appellant was a person subject to involuntary admission because he was a person with a mental illness who, because of that illness, was unable to provide for his basic physical needs so as to guard himself from serious harm.

¶ 3    The appellant brings this appeal from the order of involuntary admission. The involuntary admission was to remain in effect for 180 days from the date of the order, and, that time limit

having expired, the order is no longer in effect and no actual relief can be granted. Nevertheless, we will review this otherwise moot order under the public-interest exception to the mootness doctrine because we believe that the issues presented are of a public nature and are likely to recur and that an authoritative determination would provide guidance to public officials in the future. *In re Michael H.*, 392 Ill. App. 3d 965, 969 (2009).

¶ 4        On October 14, 2010, a petition was filed in the circuit court of Randolph County seeking to continue the involuntary admission of the appellant pursuant to section 3-813 of the Code (405 ILCS 5/3-813 (West 2010)). The petition alleged that the appellant was a person with a mental illness who, because of that illness, is unable to provide for his basic physical needs so as to guard himself from serious harm unless treated on an inpatient basis. The petition further alleges that the appellant had been transferred to the Chester Mental Health Center from Coles County after criminal charges of felony aggravated battery had been dismissed in return for civil commitment. The petition alleges that the appellant has no insight into his mental illness and is unable to function on his own in the community and that outside the structured environment, he would quickly become a danger to himself and others.

¶ 5        The petition is accompanied by the certificates of Kathryn Holt, Ph.D., a psychologist and qualified examiner, and T. Casey, M.D., a staff psychiatrist. The certificates of both examiners indicate that they had personally examined the appellant and were of the opinion that he was a person with a mental illness who, because of that illness, was unable to provide for his basic physical needs so as to guard himself from serious harm unless treated on an inpatient basis. Both certificates further indicate that both examiners believed the appellant was an individual subject to involuntary admission and in need of immediate hospitalization.

¶ 6        The certificate of Dr. Casey indicated that she based her opinion and her conclusion on the following facts. The appellant was a 22-year-old male who was admitted to the Chester Mental Health Center from the Coles County jail after he had been found unfit to stand trial for aggravated battery. While living in a group home, the appellant had stabbed another resident in the arm with a kitchen knife because he was angry that the other resident had been touching his property.

¶ 7        The appellant had a history of past self-injury, fire-setting, extreme physical aggression, elopement, and past and current command hallucinations. He had been diagnosed with schizoaffective disorder, intermittent explosive disorder, impulse control disorder, and mild to moderate mental retardation. The appellant had had numerous prior admissions to mental health centers and had exhibited aggressive behavior toward himself and toward staff and peers. He had previously stabbed himself with a pencil and attempted to electrocute himself. He had been violent with staff, necessitating restraints and medication for himself and causing injuries to staff members. He had been denied access to several groups due to inappropriate threatening statements. He had tried to set fires in the group home, had injured himself and others, and had attempted to elope multiple times. He suffered from command hallucinations telling him to kill himself and others, and delusions. The appellant also suffers from hypertension and type II diabetes.

¶ 8        The appellant had been removed from his parents' home due to allegations of abuse and neglect. He was placed in foster care when he was eight years of age. During his childhood

he received psychiatric hospitalizations because of aggressive behaviors. He was eventually moved to a group home. He was in special education throughout his educational history. He has never been married, has no children, and has no history of employment.

¶ 9      Dr. Casey stated:

"[The appellant's] psychiatric condition is so severe it was clear right from the beginning that the patient was probably not going to obtain fitness ever. His mental retardation, psychosis and mood instability are quite intense. Despite alter [*sic*] in medication, he was required to be placed on full leather restraints on 07/01/10 for unpredictable aggressive episodes. His adaptive skills are extremely poor. His cognitive deficits are quite intense. He has not demonstrated any ability to learn information, register, and retrieve when necessary. *** His behavior remains unpredictable/aggressive and his thought content is delusional/psychotic."

¶ 10      With respect to involuntary admission, Dr. Casey continued:

"[The appellant] would be unable to care for himself. He has nowhere to reside. He has a lengthy history of psychiatric treatment and violent episodes. He currently needs the structure that Chester Mental Health Center is able to offer. He would be a danger to himself and others. It is my opinion that [the appellant] needs continued inpatient treatment."

¶ 11      Kathryn Holt's certificate indicated that she based her opinion and conclusion on many of the same facts as did Dr. Casey. In addition, she noted that the appellant had tried to hang himself with a rope. The appellant exhibits the following signs and symptoms consistent with schizoaffective disorder: he admits to having auditory hallucinations, that is, he hears voices telling him to do things; he has behavior indicative of attending to internal stimuli (prolonged periods of unfocused staring with limited motor activity and no response to external environment); he makes bizarre statements; and his mood frequently swings from euthymic (smiling, cordial, polite) to nonresponsive withdrawal. The appellant had become violent while hospitalized, requiring restraint, and was threatening. Holt concluded:

"[The appellant] lacks insight into his mental illness and demonstrates poor judgment regarding self-regulation of his behavior. Although he is able to complete activities of daily living (ADLs) with prompting and supervision, his adaptive behavioral composite score indicates that he functions at the age equivalency level of 6 years, 11 months old. Consequently, he is not able to provide for his basic physical needs without extensive assistance from others. Additionally, [the appellant] has a history of aggressive behavior and non-compliance with medication. If medication and/or supervision were to be discontinued, [the appellant] would be reasonably expected to decompensate rapidly and place himself and/or others in jeopardy of physical/serious harm. In light of the data currently available to me, it is my opinion that [the appellant] currently meets the criteria for involuntary psychiatric hospitalization."

¶ 12      The petition came on for hearing on October 20, 2010, and the following occurred. The appellant's appointed counsel indicated that he had reviewed with the appellant the petition and the reports of the two examiners and that the appellant was "prepared to enter into a stipulation of those reports." The appellant's counsel stated that he would have no further

evidence to present. The State's Attorney indicated that he too would "stipulate to the records going in." The court addressed the appellant and asked him if he understood what his counsel had said and if he had any objection. The appellant indicated that he understood and did not object. The court then indicated that it would "consider the reports of Dr. Holt and Dr. Casey as evidence the same as if they had taken the witness stand and testified." The court then found, based on the written reports of Drs. Holt and Casey, that the appellant is a person subject to involuntary admission and ordered that the appellant be hospitalized in the Department of Human Services.

¶ 13    The appellant argues that the entry of a civil commitment order through a stipulated bench trial violated his due process rights as well as the Code and is contrary to case law. We do not agree. Because this case presents only a question of law, our review is *de novo*. *In re George O.*, 314 Ill. App. 3d 1044, 1046 (2000).

¶ 14    We begin by pointing out that this case does not involve the waiver of the entire hearing, or an agreed order for involuntary commitment, as was the case in *In re Michael H.*, 392 Ill. App. 3d 965 (2009). In *Michael H.*, the respondent to a petition for involuntary admission, through his counsel, waived his right to any hearing on the petition and all the procedural safeguards attendant thereto, and essentially agreed to be involuntarily admitted. The respondent's counsel told the court that his client had " 'indicated he would give up his right to the hearing scheduled for this morning.' " 392 Ill. App. 3d at 968. Apparently, no evidence was presented or considered, not even the written reports of the respondent's treatment team or examiners. On appeal, this court held that a respondent cannot effectively waive the entire hearing on a petition for involuntary admission; if the respondent agrees to be admitted, he must be admitted on a voluntary basis. 392 Ill. App. 3d at 979.

¶ 15    The case at bar is more like *People v. Johnson*, 2012 IL App (5th) 070573, where the respondent stipulated to the admission into evidence of a psychiatrist's report and did not make any argument in defense, but did not agree to be involuntarily admitted or waive his right to a hearing. On appeal, the respondent raised arguments similar, if not identical, to those raised in the case at bar: that because he stipulated to all of the evidence needed to support the determination that he was subject to commitment, the stipulation was tantamount to a waiver of the hearing, which the Code does not permit, and that even assuming waiver is permissible, the record does not demonstrate that the waiver was knowing and voluntary. 2012 IL App (5th) 070573, ¶ 6.

¶ 16    This court held that the respondent had not waived the hearing in its entirety, but had merely waived the statutory requirement that the psychiatrist who had actually examined him testify in person at the hearing, a waiver which is expressly allowed by the Code. 2012 IL App (5th) 070573, ¶ 11. Section 3-807 of the Code provides as follows:

"No respondent may be found subject to involuntary admission on an inpatient or outpatient basis unless at least one psychiatrist, clinical social worker, or clinical psychologist who has examined him testifies in person at the hearing. *The respondent may waive the requirement of the testimony subject to the approval of the court*." (Emphasis added.) 405 ILCS 5/3-807 (West 2010).

The court noted that the respondent had not waived other requirements of the Code, such as

-5-

the requirement that the State prove its case by clear and convincing evidence. *Johnson*, 2012 IL App (5th) 070573, ¶ 21. Section 3-808 of the Code provides that no respondent may be found subject to involuntary admission unless that finding has been established by clear and convincing evidence. 405 ILCS 5/3-808 (West 2010). The court held that neither the Code nor due process was violated by this procedure. *Johnson*, 2012 IL App (5th) 070573, ¶ 17.

¶ 17   In the case at bar, as in *Johnson*, the appellant merely stipulated to the admission into evidence of the reports of the two examiners. The court considered these reports as evidence the same as if the examiners had been present and testified in open court. Either the reports established by clear and convincing evidence that the appellant was a person subject to involuntary admission or they did not. The burden remained on the State. Granted, the examiners were not subjected to cross-examination, and the appellant presented no evidence or argument on his own behalf, but these are decisions properly left to counsel and are not rights belonging to the appellant. *Johnson*, 2012 IL App (5th) 070573, ¶ 15. In *Johnson*, 2012 IL App (5th) 070573, ¶ 14, the court pointed out that even in the criminal setting, the decision to stipulate to evidence is generally a tactical decision that can be made by a defendant's attorney without any indication in the record that the defendant personally chose to waive his constitutional right to confront particular witnesses and without any indication that this waiver was knowing and voluntary.

¶ 18   The procedure followed in the case at bar did not violate the appellant's rights to due process and did not violate any provision of the Code. The appellant did not waive the entire commitment hearing or agree to be involuntarily admitted, but agreed only to waive the live testimony of the examiners and to submit the case to the court on the basis of the written reports.

¶ 19   The appellant argues that even if a stipulated bench trial is permitted by law, the circuit court still has an obligation to confirm that the appellant voluntarily and knowingly waived his constitutional right to cross-examine witnesses, an obligation which it did not fulfill in the case at bar. In *Johnson*, 2012 IL App (5th) 070573, ¶ 14, we pointed out that even in the criminal setting, the decision to stipulate to evidence is generally a tactical decision that can be made by a defendant's attorney without any indication in the record that the defendant personally chose to waive his constitutional right to confront particular witnesses and without any indication that this waiver was knowing and voluntary. The respondent to an involuntary commitment proceeding is not entitled to the same rights as is a criminal defendant, and in *Johnson*, 2012 IL App (5th) 070573, ¶ 17, we held that a respondent's rights are adequately protected by the procedures established in the Code. Section 3-807 of the Code requires court approval before a respondent may waive his right to have an examiner testify in person in open court, but it does not require any specific admonitions to, or inquiries of, the respondent. 405 ILCS 5/3-807 (West 2010). The appellant's rights are protected by the statute's requirement that the right only be waived with approval of the court. The procedures of the Code are sufficient to protect the appellant's due process rights in a mental health proceeding.

¶ 20   The appellant next argues that a stipulated bench trial such as the one in the case at bar contradicts the Code's statutory scheme as reflected in section 3-801.5 of the Code (405 ILCS 5/3-801.5 (West 2010)) regarding agreed orders for admission on an outpatient basis.

That section provides that a respondent to a petition for involuntary admission may enter into an agreement with the State for an order for admission on an *outpatient* basis provided, *inter alia*, that the court advises the respondent of the conditions of the proposed order and is satisfied that the respondent understands and agrees to those conditions. 405 ILCS 5/3-801.5(a) (West 2010). The appellant argues that he is entitled to the same protections in the context of a stipulated bench trial and that no such protections were afforded him. Again, we do not agree.

¶ 21　　In the context of a stipulated bench trial, the only right being waived is the appellant's statutory right to have an examiner testify in person in open court. In all other respects the appellant's rights are unaffected by the stipulated bench trial. The Code expressly provides for the waiver of this statutory right to have an examiner testify in person in open court. 405 ILCS 5/3-807 (West 2010). The respondent does not thereby agree to be admitted; the burden remains with the State to establish by clear and convincing evidence that the respondent is a person subject to involuntary admission. We do not find the proceedings in the case at bar to be inconsistent with the statutory scheme of the Code regarding agreed orders.

¶ 22　　The appellant also argues that the proceedings in the case at bar are inconsistent with the statutory scheme of encouraging the adoption of voluntary admission as opposed to involuntary admission because a stipulated bench trial is the functional equivalent of a voluntary admission but without its accompanying statutory and therapeutic benefits. We do not agree that a stipulated bench trial is the functional equivalent of a voluntary admission. Again, in this stipulated bench trial the only right being waived is the respondent's right to have an examiner testify in person in open court. The Code expressly provides for such a procedure. 405 ILCS 5/3-807 (West 2010). A respondent to a petition for involuntary admission can stipulate to the introduction of evidence without agreeing to be involuntarily admitted. This is not the functional equivalent of a voluntary admission. The evidence may or may not be sufficient to prove that the respondent is a person subject to involuntary admission.

¶ 23　　The appellant next argues that allowing a stipulated bench trial will encourage *pro forma* hearings which would result in erosion of a patient's liberty interests. In recent years the courts have gone to some lengths to impress upon the circuit courts that proceedings under the Code are not to be conducted *pro forma*. The courts have required strict compliance with the Code in every respect (see *In re George O.*, 314 Ill. App. 3d 1044, 1046 (2000)), and we do so here. The procedure followed in the case at bar is expressly provided for in the Code and does not violate any specific provision or the statutory scheme, nor does it violate the appellant's due process rights.

¶ 24　　Finally, relying on *In re Mark W.*, 348 Ill. App. 3d 1065 (2004), the appellant argues that the stipulation in the case at bar was insufficient to establish by clear and convincing evidence that he is a person subject to involuntary admission. In *Mark W.*, a proceeding to involuntarily administer medication under the Code, the respondent's counsel stipulated as follows:

　　" '[W]e'll have no evidence to dispute the [S]tate's witnesses, so we're willing to stipulate that the State would offer evidence that Mark has a serious mental illness, that

because of his illness he suffers by suffering from pervasive delusions, [that] his symptoms have persisted for a marked period of time, that they believe that the benefits of the treatment would outweigh the harm, that he lacks the capacity to make a reasoned decision about his treatment, and that less restrictive services are inappropriate.

We don't necessarily agree with all of that evidence, but we stipulate that it will be presented, and we have nothing to controvert it.' " 348 Ill. App. 3d at 1075.

On appeal, this court found this stipulation to be insufficient because it failed to include any facts underlying its conclusions and did not address the required factors on which to base a decision whether to involuntarily administer medication. 348 Ill. App. 3d at 1076.

¶ 25 In the case at bar, the stipulation entered into by the parties was simply that the reports of the two examiners be admitted into evidence. The court accepted the stipulation and stated that it would "consider the reports of Dr. Holt and Dr. Casey as evidence the same as if they had taken the witness stand and testified." The stipulation was sufficient for its purpose. Either the evidence as admitted pursuant to the stipulation was sufficient to prove that the appellant was a person subject to involuntary admission or it was not. The circuit court found that it was.

¶ 26 The appellant does not argue in his opening brief that the circuit court's finding is contrary to the manifest weight of the evidence, and the argument is, therefore, waived. Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008). The appellant does make the argument in his reply brief, and despite its having been waived, we reject it on its merits. The certificates of Drs. Holt and Casey establish by clear and convincing evidence that the appellant suffered from the mental illness of schizoaffective disorder. This mental illness rendered the appellant unable to provide for his basic physical needs so as to guard himself from serious harm. He suffered from hallucinations telling him to kill himself, he had repeatedly tried to hurt or kill himself, and his thought content was delusional/psychotic. The appellant experiences prolonged periods of unfocused staring with limited motor activity and no response to external environment. He lacks insight into his mental illness and demonstrates poor judgment regarding self-regulation of his behavior. He can complete activities of daily living only with prompting and supervision. Finally, he suffers from hypertension and diabetes and has nowhere to live. Dr. Casey stated that the appellant would be unable to care for himself outside the hospital setting.

¶ 27 The certificates of the doctors also support a finding that hospitalization was the least restrictive treatment alternative. The appellant had been removed from the group home because he had become violent and attacked another resident with a knife. He had a history of elopement from less restrictive environments and needed the structure of hospitalization. The evidence was sufficiently clear and convincing to establish that the appellant was a person subject to involuntary admission.

¶ 28 For the foregoing reasons, the judgment of the circuit court of Randolph County is hereby affirmed.

¶ 29 Affirmed.