NOTICE

Decision filed 05/16/23. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2023 IL App (5th) 220157-U

NO. 5-22-0157

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 14-CF-926 |
| | ) | |
| DAVID A. McGEE, | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Barberis and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Where defendant's postconviction claims were without reasonable merit, the court did not err in dismissing the petition. Moreover, postconviction counsel provided reasonable assistance. As any argument to the contrary would lack merit, we grant defendant's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2    Defendant, David A. McGee, appeals the second-stage dismissal of his postconviction petition. His appointed appellate counsel, the Office of the State Appellate Defender (OSAD), has concluded that there is no arguably meritorious argument that the circuit court erred in dismissing defendant's petition. Accordingly, it has filed a motion to withdraw as counsel along with a supporting memorandum. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). OSAD has notified defendant of its motion, and this court has provided him with ample opportunity to respond. However, he has not done so. After considering the record on appeal, OSAD's memorandum, and

1

its supporting brief, we agree that this appeal presents no arguably meritorious issues. Thus, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 3                                    BACKGROUND

¶ 4       Defendant was charged with attempted criminal sexual assault and unlawful restraint following an incident with A.M., his grandmother. Prior to trial, defendant discharged his public defender. While proceeding *pro se*, he filed several motions. Relevant here, he filed a motion "for Suppression of Peoples [*sic*] Evidence," in which he argued that a knife and duct tape that A.M. gave to the police and claimed defendant used during the incident should be suppressed because A.M. did not give those items to the police until almost two months after the incident and they were never in defendant's possession. Defendant asserted that a laptop should be suppressed because forensic examination showed that it had been used to access pornography, which is not illegal to view and was therefore inadmissible. The trial court reserved ruling until trial.

¶ 5       At defendant's request, counsel was reappointed. As trial approached, the parties filed several motions *in limine*, three of which are relevant here. The State sought to exclude evidence that former Decatur police officer Justin Gray had been disciplined. The State alleged that, in August 2014, Gray had been placed on administrative leave for violating his department's "duty to tell the truth" policy, but that the violation was not connected to this case. Defense counsel sought the opportunity to *voir dire* Gray to discover whether the acts resulting in discipline were related to a single incident or a pattern of conduct over a substantial period. The court reserved ruling until the issue was raised at trial.

¶ 6       The State also moved to bar A.M.'s daughter, Crystal Wood, from testifying that A.M. may have had hallucinations in the past. According to the State, Wood thought that A.M. might have hallucinated on two occasions in 2013. However, Wood was not certain of this. Moreover, Wood

2

was not a psychiatrist and was not qualified to offer an expert opinion on whether A.M. experienced hallucinations. Over defense counsel's objection, the court allowed the motion without prejudice to raise the issue again at trial.

¶ 7    The defense sought to bar the State from introducing evidence of defendant's viewing of pornography, contending that it was not causally connected to the present offense. The court denied the motion as to the dates of three specific incidents but allowed it as to other times.

¶ 8    At trial, A.M., who was 81 at the time, testified that on April 1, 2014, A.M. awoke in her bedroom to find defendant standing naked at the edge of her bed. Defendant wanted her to come to the kitchen and "watch something" with him. A.M. went into the kitchen and sat at the table. Defendant then said he wanted to have sex with her. She refused, they argued "a little bit," and defendant went to bed.

¶ 9    A.M. further testified that on May 13, 2014, she woke up to find defendant "standing at the end of [her] bed with a knife in his hand." Defendant, who was naked, wanted A.M. to watch something on the computer. She did not want to, but defendant threatened to kill her cat, so she got up, went to the front room, and sat on the couch. Defendant was holding a knife and duct tape, and the computer was playing a pornographic video. Defendant said that he "wanted to have sex" with A.M. A.M. said she could not and did not want to. At some point, defendant put the duct tape over her mouth and nose. She said that she could not breathe, and defendant took the tape off her nose. "After about an hour," A.M. stated she had to use the bathroom. While in the bathroom, she tried to find her medical alert device to call for help, but she could not locate it. She returned to the living room, where defendant tried to tape her arms down. A.M. told defendant she was going to tell his mother, and defendant calmed down. Defendant later said that he "messed up"

3

and his mother would make him leave the house. A.M. told him she would not say anything if the conduct did not happen again.

¶ 10    However, on June 10, 2014, A.M. woke to find defendant naked and standing at the end of her bed. She activated her medical alert device, and the alarm in the front room sounded. As defendant ran to shut it off, A.M. pushed some boxes against the door of her room and called defendant's mother. When the police arrived, defendant locked himself in his room.

¶ 11    On cross-examination, A.M. testified she remembered talking to a police officer on June 10, 2014. She mentioned the three incidents, although she could not remember telling the officer certain aspects of each incident.

¶ 12    Decatur police detective Joe Patton testified he met with A.M. on July 30, 2014. She brought him a knife, a laptop, and a roll of duct tape. Wood, defendant's mother and A.M.'s daughter, testified that she received an early morning call from A.M. on June 10, 2014. During the call, Wood could hear her son's voice "getting louder."

¶ 13    Gray testified he was a Decatur police officer in 2014. He was dispatched at approximately 4:30 a.m. on June 10, 2014, to check on A.M.'s welfare. As he entered her residence, he saw a laptop "playing pornography." He asked defendant if he had attempted to have sex with his grandmother, and defendant denied it. When asked why A.M. would make this allegation, defendant stated "he was pretty high and was doing some weird things and whatever she said is probably true."

¶ 14    After the close of evidence, defense counsel informed the court that a juror was falling asleep. At his request, the court replaced that juror with an alternate. The jury found defendant guilty of attempted aggravated criminal sexual assault but not guilty of unlawful restraint.

¶ 15    Following trial, defendant filed a *pro se* pleading alleging that defense counsel was ineffective for failing to move to suppress the knife, duct tape, and computer, despite defendant's repeated requests to do so.  Defense counsel filed a motion for a new trial arguing, among other things, that the court erred in allowing evidence that defendant was watching pornography.

¶ 16    The court conducted a *Krankel* hearing.  See *People v. Krankel*, 102 Ill. 2d 181 (1984).  The court found that counsel was not ineffective for not moving to suppress the knife and duct tape because there was no legal basis upon which those items could have been suppressed.  With regard to the computer, an analysis of which showed that pornography websites were accessed on April 1, 2014, May 13, 2014, and June 10, 2014, the court noted that pretrial motions addressing that issue were filed and that counsel preserved the issue in his posttrial motion.  Accordingly, counsel was not ineffective for failing to raise the issue.  The court denied defendant's *pro se* motion as well as counsel's motion.

¶ 17    On direct appeal, the Fourth District rejected defendant's argument that Wood should have been allowed to testify that A.M. sometimes exhibited confusion after awakening.  *People v. McGee*, 2018 IL App (4th) 160889-U.

¶ 18    Defendant then filed a postconviction petition in which he alleged that counsel was ineffective for (1) failing to seek suppression of the knife and duct tape, (2) failing to secure an expert to evaluate A.M.'s mental state, (3) failing to cross-examine Gray about being disciplined, and (4) allowing an officer's "perjured" testimony about access to pornographic websites.  Defendant also alleged that the prosecutor improperly suggested in closing argument that defendant intentionally hid A.M.'s medical alert device to prevent her from seeking help, and that some of the jurors had been the victims of sexual offenses and one juror slept during trial.  Defendant further argued that the jury did not represent a fair cross-section of the community

5

because none of the jurors were in defendant's age group. Defendant alleged generally that counsel on direct appeal was ineffective for failing to assert trial counsel's ineffectiveness.

¶ 19 The circuit court appointed counsel who filed an amended petition. The amended pleading added a claim that counsel was ineffective for failing to seek suppression of the laptop and pornography evidence but also incorporated defendant's *pro se* petition.

¶ 20 The State moved to dismiss. The circuit court granted the motion and defendant timely appealed.

¶ 21                                         ANALYSIS

¶ 22 OSAD concludes that no reasonably meritorious argument exists that the circuit court erred by dismissing the petition. OSAD asserts that the issues raised plainly lack merit and we agree.

¶ 23 The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) provides a mechanism by which a criminal defendant may assert that his conviction resulted from a substantial denial of his constitutional rights. *Id.* § 122-1(a); *People v. Delton*, 227 Ill. 2d 247, 253 (2008). Proceedings under the Act are collateral. *People v. Edwards*, 2012 IL 111711, ¶ 21. As a result, issues that were decided on direct appeal or in previous collateral proceedings are barred by *res judicata* (*People v. Pitsonbarger*, 205 Ill. 2d 444, 458 (2002)), and issues that could have been raised earlier, but were not, are forfeited (*People v. Blair*, 215 Ill. 2d 427, 443-44 (2005)). A petition must be supported by "affidavits, records, or other evidence supporting its allegations" or "shall state why the same are not attached." 725 ILCS 5/122-2 (West 2016).

¶ 24 Several of defendant's claims alleged that counsel was ineffective. In order to establish such a claim, a defendant must show that counsel's representation fell below an objective standard of reasonableness and there is a reasonable probability that, but for these unprofessional errors, the

6

result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984); *People v. Albanese*, 104 Ill. 2d 504, 525-27 (1984).

¶ 25 In the petition, defendant again claimed that counsel should have moved to suppress the knife and duct tape. We note that the trial court entertained defendant's *pro se* motion on the subject, albeit reserving ruling until trial. By that time, defendant was again represented by counsel who did not raise the issue again.

¶ 26 Generally, whether to file a suppression motion is a strategic decision to which we defer. *People v. Spann*, 332 Ill. App. 3d 425, 432 (2002). We see no reason not to do so here, as defendant has not provided a valid basis on which the evidence should have been suppressed.

¶ 27 Defendant argued that the items should have been suppressed because he never had possession of them. However, defendant's mere denial that he used them is not a basis for suppression. A.M. testified that defendant used them during the incident. As the trial court noted, whether she was being truthful was a factual issue for the jury to resolve.

¶ 28 Defendant vaguely alleged that "chain-of-custody" issues surrounded the evidence, but he does not specifically identify any. He complained merely that A.M. did not turn the evidence over to police until several weeks after the last incident. Generally, chain of custody refers to evidence that authorities properly maintained the evidence *after* it was seized. See *People v. Herrero*, 324 Ill. App. 3d 876, 881-82 (2001) (to establish chain of custody, the State must show that it took reasonable protective measures after the substance was seized and that it was probable the evidence was not changed in any important respect). If an item possesses unique and readily identifiable characteristics and is relatively impervious to change, testimony that the item sought to be admitted is the same one recovered and in substantially the same condition as when recovered provides an adequate foundation for admission. *People v. Echavarria*, 362 Ill. App. 3d 599, 603 (2005). Here,

7

A.M. testified that the items were the same ones defendant used, thus providing an adequate foundation for their admission.

¶ 29    Defendant makes much of the fact that A.M. apparently held the items for about two months before turning them over to police. But we are aware of no case holding that the length of time the owner maintained the items before giving them to police affects their admissibility. The items were not likely to change or degrade in that time, and defendant has not provided evidence suggesting that anyone tampered with them during that period.

¶ 30    The issues regarding the laptop and defendant's viewing of pornography are more complicated due to the shifting nature of defendant's arguments. Prior to trial, defendant filed a *pro se* motion to suppress evidence of his viewing pornography, arguing that such activity was not illegal. The court reserved ruling until trial. After being reappointed, defense counsel filed a motion *in limine* to bar the evidence, arguing that there was no causal connection between viewing pornography and the instant offense. The trial court denied the motion as to three specific dates but allowed it as to any other dates.

¶ 31    After trial, defendant filed a *pro se* motion arguing that defense counsel was ineffective. Defendant contended that he asked counsel to file a motion to suppress the knife, duct tape, and computer due to "chain-of-custody" issues, but counsel refused to do so. At about the same time, defense counsel filed a posttrial motion arguing that the court erred in "allowing evidence of the Defendant watching pornography." The trial court found that counsel had raised the issue in a motion *in limine* and preserved the issue in a posttrial motion. Thus, counsel could not be deemed ineffective for failing to raise the issue. The court also denied defense counsel's posttrial motion.

¶ 32    The postconviction petition repeated defendant's initial argument that the laptop should have been suppressed because "there is nothing illegal about viewing pornography." In oral

8

argument, postconviction counsel argued that "with respect to the computer" the "prejudicial effect of that evidence far outweighed it's [*sic*] probative value." Later, however, counsel agreed with the court "that that's a chain of custody issue not really an expectation of privacy issue."

¶ 33     The petition thus appeared to conflate two distinct issues. On one hand, defendant argued that evidence that he was watching pornography should have been suppressed because it is not illegal to view pornography and that the "prejudicial effect of that evidence far outweighed it's [*sic*] probative value." Defendant thus appeared to argue that evidence that he viewed pornography on the laptop was inadmissible as evidence of other bad acts.

¶ 34     Generally, evidence of other crimes or bad acts that a defendant committed is not admissible merely to prove that defendant's propensity to commit crimes. *People v. Crawford*, 2021 IL App (5th) 170496, ¶ 27. Even where such evidence is admissible, a court should exclude it where its prejudicial effect outweighs its probative value. *Id.*

¶ 35     On the other hand, defendant also argued at times that, like the knife and duct tape, the computer itself should have been suppressed due to "chain of custody" issues. We agree that counsel preserved the former issue and thus cannot be found ineffective on that basis. Moreover, defendant has never argued that the trial court's partial denial of the motion was erroneous, thus forfeiting the issue. As to the latter issue, we find that, like the other items, A.M.'s delay in bringing them to the police—without more—did not raise any chain-of-custody issues. As there was no legal basis for suppressing the computer, counsel was not ineffective for failing to file such a motion.

¶ 36     Defendant's petition also argued that counsel was ineffective for not securing a witness to evaluate A.M.'s mental state. OSAD concludes that this issue clearly lacks merit, citing section 115-7.1 of the Code of Criminal Procedure of 1963, which provides:

"Except where explicitly authorized by this Code or by the Rules of the Supreme Court of Illinois, no court may require or order a witness who is the victim of an alleged sex offense to submit to or undergo either a psychiatric or psychological examination." 725 ILCS 5/115-7.1 (West 2014).

¶ 37 We agree that, in light of this provision, a motion to have A.M. examined by an expert would not have succeeded. Thus, counsel could not be found ineffective on this basis. We further note that defendant's argument is entirely speculative. If a postconviction petition alleges that trial counsel was ineffective for failing to call certain witnesses, it must be supported with affidavits showing the witnesses' potential testimony and explain the significance of their testimony. *People v. Jones*, 210 Ill. App. 3d 375, 378 (1991). The petition did not include an affidavit from a witness who could testify that A.M. had experienced hallucinations. Thus, defendant's argument is entirely speculative. Defendant's only apparent basis for such speculation is Wood's statement that, on two occasions in 2013, A.M. awakened and discussed things that were "not real." However, Wood had no background in psychiatry and was unsure herself if A.M. was hallucinating or merely describing something she had experienced in a dream. See *McGee*, 2018 IL App (4th) 160889-U, ¶¶ 30-31.

¶ 38 OSAD further concludes that counsel was not ineffective for failing to cross-examine Gray about his prior discipline in an unrelated case. Generally, the extent of cross-examination is a strategic issue for defense counsel. *People v. Watson*, 2012 IL App (2d) 091328, ¶ 32. The record makes clear that trial counsel's decision not to cross-examine Gray on this issue was indeed a strategic one. As the trial court noted, counsel needed Gray to testify that A.M. had given the police statements that were inconsistent with her trial testimony. Thus, counsel did not want to

completely destroy his credibility. Moreover, counsel observed that the discipline apparently involved a single incident which was unrelated to this case.

¶ 39 The *pro se* petition alleged that counsel was ineffective for failing to cross-examine officer Ronald Borowczyk, who conducted a forensic analysis of the laptop. Defendant contended that the "viewing dates" did not coincide with Borowczyk's live testimony or "pretrial investigation." Defendant does not explain specifically how the dates did not "coincide," or how this prejudiced his case. In any event, decisions about whether and how to cross-examine witnesses are strategic ones on which the "ultimate decision" is left to counsel's judgment. *People v. Johnson*, 2012 IL App (5th) 070573, ¶ 15 (citing *People v. Clendenin*, 238 Ill. 2d 302, 318-19 (2010)).

¶ 40 The trial court also did not err in rejecting defendant's claim of prosecutorial misconduct during closing argument. The prosecutor noted A.M.'s testimony that when she went to the bathroom, she looked for her medical alert device to call for help but could not find it. The prosecutor stated that defendant "had clearly thought about that," implying that he had hidden the device. The petition alleged, in essence, that this remark was not based on the evidence.

¶ 41 Prosecutors are given wide latitude in making closing arguments. *People v. Wheeler*, 226 Ill. 2d 92, 123 (2007). They may properly comment on the evidence and draw reasonable inferences from it. *People v. Cosmano*, 2011 IL App (1st) 101196, ¶ 57. Closing arguments must be viewed in their entirety, and allegedly erroneous arguments must be viewed in context. *Id.* Reviewing courts will not focus on selected phrases or remarks in isolation but rather consider the closing argument as a whole. *People v. Nicholas*, 218 Ill. 2d 104, 122 (2005). Reversible error occurs "only if the defendant demonstrates that the improper remarks were so prejudicial that real justice was denied or that the verdict resulted from the error." *People v. Runge*, 234 Ill. 2d 68, 142 (2009).

11

¶ 42    That defendant had hidden A.M.'s device was arguably a fair inference from the evidence. But even if it was not, that isolated remark did not deprive defendant of a fair trial. The evidence of his guilt was overwhelming. A.M. clearly described the incident and identified defendant as the perpetrator. She described the incident to police shortly after it occurred, albeit with some minor discrepancies.

¶ 43    Finally, the court did not err in rejecting defendant's claims about the jurors. Defendant complained that several of the jurors had described being victims of crimes, including some of a sexual nature. But mere suspicion of bias is not sufficient to disqualify a juror for cause. *People v. Cloutier*, 156 Ill. 2d 483, 496 (1993). Here, all the jurors stated unequivocally that they could be fair despite their experiences.

¶ 44    Moreover, although defendant did not expressly frame the issue in terms of ineffective assistance of counsel, we note that trial counsel accepted all of the complained-of jurors. Counsel's actions during jury selection are generally considered a matter of trial strategy and, as such, are virtually unchallengeable. *People v. Manning*, 241 Ill. 2d 319, 333 (2011). There is no basis for a claim that the trial court should have struck the jurors *sua sponte* despite counsel's acceptance.

¶ 45    Finally, OSAD concludes that there is no meritorious argument that postconviction counsel provided unreasonable assistance. We agree.

¶ 46    A defendant has no constitutional right to the assistance of counsel in a postconviction proceeding. *People v. Waldrop*, 353 Ill. App. 3d 244, 249 (2004). Rather, such a petitioner is guaranteed only a reasonable level of assistance. *People v. Pinkonsly*, 207 Ill. 2d 555, 567 (2003). Reasonable assistance of counsel is governed by Illinois Supreme Court Rule 651(c), which requires either the record or a certificate filed by counsel to show that counsel: (1) has consulted with petitioner by phone, mail, electronic means, or in person to ascertain his or her contentions

12

of deprivation of constitutional rights; (2) has examined the record of the proceedings at the trial; and (3) has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). The filing of a facially valid Rule 651(c) certificate creates a rebuttable presumption that counsel provided reasonable assistance in compliance with the rule. *People v. Beasley*, 2017 IL App (4th) 150291, ¶ 39.

¶ 47   Here, postconviction counsel filed a Rule 651(c) certificate asserting that she had consulted with defendant to ascertain his contentions, examined the record, and made any necessary amendments to defendant's *pro se* petition. Thus, the certificate was facially valid and created a rebuttable presumption that counsel provided reasonable assistance.

¶ 48   The amended petition incorporated defendant's *pro se* petition, reshaped several of defendant's *pro se* claims into a more suitable legal form, and added defendant's affidavit. Thus, defendant cannot overcome the presumption of reasonable assistance.

¶ 49                                CONCLUSION

¶ 50   As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 51   Motion granted; judgment affirmed.